Juan MENDOZA MANIMBAO,
Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

Nos. 00–71329, INS–A70–184–349.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 5, 2002.*

Filed Aug. 1, 2002.

* This panel unanimously finds this case suit-able for decision without oral argument.

Joseph L. Feldun, Korenberg, Abramowitz & Feldun, Encino, CA, for the petitioner.

Cathy Appling, Attorney, Office of Immigration Litigation, U.S. Department of Justice, Civil Division, Washington, DC, for the respondent.

Before TROTT, THOMAS, and WARDLAW, Circuit Judges.

Opinion by Judge WARDLAW; Dissent by Judge TROTT.

## OPINION

WARDLAW, Circuit Judge.

Juan Mendoza Manimbao, a native and citizen of the Philippines, petitions for review of a final order of deportation issued by the Board of Immigration Appeals ("BIA"), denying his applications for asylum and withholding of deportation under the Immigration and Nationality Act ("INA") sections 208 and 243(h), 8 U.S.C.

§§ 1158, 1253(h) (1994), and reinstating a period of voluntary departure. The Immigration Judge ("IJ") failed to make an express credibility finding supported by specific, cogent reasons. Concluding that credibility was the central issue in the case, the BIA substituted itself for the IJ and made its own—adverse—credibility determination. Because, in this case, credibility was the dispositive issue, the BIA erred in (1) failing to remand to the IJ for an express finding, consistent with the requirements of its regulations and the law of our circuit; and (2) requiring Manimbao to provide corroborative evidence to meet his burden, when, if his testimony were deemed credible, he would have had no obligation to do so.

## I. Background

Manimbao entered the United States on June 19, 1992, as a nonimmigrant visitor, with permission to remain until December 18, 1992. On April 11, 1996, the INS issued an Order to Show Cause charging Manimbao with deportability under section 241(a)(1)(B) of the INA, 8 U.S.C. § 1251(a)(1)(B) (1992), because of his unauthorized presence in the United States.

On August 7, 1996, at deportation proceedings, Manimbao admitted to the factual allegations, conceded his deportability, and applied for asylum, withholding of deportation, and voluntary departure. Manimbao's asylum application stated that sometime in 1978 he joined an organization called the Barangay to assist the government in its campaign against communist rebels, such as the New People's Army ("NPA"). He actively participated in the Barangay's public activities, including taking part in 1983 in the late President Marcos's campaign against communist rebels. The Barangay met with some success, angering the communist rebels. When the NPA learned of the Barangay, it obtained a list of the names of its members. Having found Manimbao on the list, the NPA looted his family's property and killed their farm animals. Later, one night while he was walking with four companions, the group was attacked by heavily armed men. They shot four of his friends, resulting in the death of one, Nick Santos, and injury to the others. Manimbao managed to escape temporarily, but was captured by the armed men and taken to a secluded area where he was interrogated and beaten. The NPA demanded the names of other Barangay members. A neighbor sought help and the military rescued him. The application also stated that if he returned to his home country he would be "killed for sure," as members of the NPA "are still looking for [him]."

At his deportation hearing on January 21, 1997, Manimbao testified through an interpreter that he left the Philippines because the NPA had placed his life in jeopardy due to his membership in the Barangay. He explained that he joined the Barangay, an organization that opposed the NPA, and supported the government, in 1978. In a somewhat confusing colloquy, he stated that "five of us were walking when—when Nick Santos was killed;" four were shot and four escaped. He then stated: "I was the only one not killed or spared." Manimbao surmised the men were members of the NPA because he helped the Barangay and communicated with the military, noting the men asked him "who are the people I was with and if the organization is still alive." He further testified that he had neither informed the attackers that he was a member of the Barangay nor had they asked him. The IJ asked Manimbao to clarify who was killed and how many were injured the night of the attack by armed men. Manimbao clarified his earlier testimony, stating that Santos had been shot along with three other men and that he (Manimbao)

was not killed, because the NPA wanted to interrogate him for additional information about the Barangay. Manimbao also stated that the three men, other than Santos, who had been shot survived. Following this incident, the NPA created problems in his town, harassing his family and the businesspeople. Manimbao believes the NPA will harm him if he returns to his country.

The IJ denied Petitioner's applications for asylum and withholding of deportation, but granted voluntary departure. The IJ correctly recognized that the applicant's testimony alone may sustain his burden of establishing eligibility for asylum. The IJ then seized upon seeming inconsistencies in Manimbao's testimony (all of which actually had been clarified and reconciled within the transcript) to decide that Manimbao's testimony alone was not sufficiently detailed, plausible, and complete to meet his burden. The IJ did not, however, find that Manimbao was not credible.

Both the government and the BIA recognized this flaw in the IJ's decision, but attempted nevertheless to circumvent both BIA and Ninth Circuit law governing the standards for credibility determinations by concluding that the IJ had made an "implicit" finding. The BIA acknowledged "that the credibility of [Manimbao's] testimony is central to this case," and found that the IJ "implicitly" determined Manimbao was not credible. It then scoured the record to find support for the adverse credibility decision the IJ had failed to make. Finally, the BIA dismissed Manimbao's petition for failure "to meet his burden of establishing past persecution or a well-founded fear of [future] persecution. . . ." Chairman Paul Wickham Schmidt dissented:

> The Immigration Judge did not make a credibility finding that satisfies the standards we set forth in *Matter of A–S,* 21 I & N Dec. 1106 (BIA 1998). The majority attempts to remedy this defect by making an adverse credibility finding for the first time on appeal. Ninth Circuit law does not permit us to do this. *Abovian v. INS,* [219 F.3d 972, 978] (9th Cir.2000); *Campos–Sanchez v. INS,* 164 F.3d 448, 450 (9th Cir.1999).

Manimbao filed a timely petition for review. He contends that the BIA erred in making an adverse credibility determination for the first time on appeal in violation of his Fifth Amendment right to due process.

## II. Standard of Review

■ "We review credibility findings under a substantial evidence standard." *Aguilera–Cota v. United States INS,* 914 F.2d 1375, 1381 (9th Cir.1990). Although we accord substantial deference to an IJ's credibility finding, the IJ must make one, and offer a "specific, cogent reason for any stated disbelief." *Hartooni v. INS,* 21 F.3d 336, 342 (9th Cir.1994). "The IJ must not only articulate the basis for a negative credibility finding, but those reasons must be substantial and bear a legitimate nexus to the finding." *Aguilera–Cota,* 914 F.2d at 1381. "[W]hen the IJ provides specific reasons for the questioning of a witness's credibility, this court may evaluate those reasons to determine whether they are valid grounds upon which to base a finding that the applicant is not credible." *Lopez–Reyes v. INS,* 79 F.3d 908, 911 (9th Cir.1996). When the IJ makes implicit credibility observations in passing, however, this does not constitute a credibility finding. *See Aguilera–Cota,* 914 F.2d at 1383 ("The mere statement that a petitioner is 'not entirely credible' is not enough.").

## III. Discussion

### A. Credibility Determination

■ Petitioner contends that the BIA erred in making an adverse credibility de-

termination for the first time on appeal. Instead of addressing this argument directly, the Government asks us to review the BIA's credibility determination under the substantial evidence standard. We reject the Government's request, agreeing with the Petitioner that his Fifth Amendment right to due process was violated when the BIA made an adverse credibility determination in the first instance in a case, such as this, where credibility was dispositive.

 It is beyond debate that, to ensure that the substantive law is administered fairly, the Fifth Amendment provides a right to a "full and fair hearing" in deportation cases. *Campos–Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir.1999); 2 Kenneth C. Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.2, at 561 (4th ed.2002); Jack Wasserman, *Immigration Law and Practice* 217 (3d ed.1979); Michael Scaperlanda, *Are We That Far Gone?: Due Process and Secret Deportation Proceedings*, 7 Stan. L. & Pol'y Rev. 23, 25 (1996). Therefore, "[w]hen the BIA decides an asylum case 'based on an independent, adverse, credibility determination, contrary to that reached by the IJ, it must give the petitioner an opportunity to explain any alleged inconsistencies that it raises for the first time.' " *Abovian v. INS*, 219 F.3d 972, 978 (9th Cir.), *amended by* 228 F.3d 1127 *and* 234 F.3d 492 (2000) (quoting *Campos–Sanchez*, 164 F.3d at 450). This holding contemplates that when the IJ has made a credibility determination, it is subject to review, but not reversal if it was favorable, unless the petitioner is accorded certain due process rights.

In a trilogy of cases, relied upon by both the Government and Manimbao, we elaborated upon these due process requirements. First, in *Campos–Sanchez*, we held that the BIA violated the due process clause when, after both the INS and the IJ expressly found the petitioner credible, the BIA, upon an independent review of the record, denied the petitioner asylum and withholding of deportation based solely on its adverse assessment of his credibility. *Campos–Sanchez*, 164 F.3d at 449–50. We reversed the decision of the BIA, concluding that the Fifth Amendment had been violated:

> Campos–Sanchez, however, had not been advised below that his credibility was questionable, or that any discrepancies appeared to exist; nor was he asked to explain any such perceived discrepancies. Quite the contrary, both the INS and the IJ expressly found Campos–Sanchez to be credible. Thus, Campos–Sanchez had no notice of the inconsistencies perceived by the BIA, and no opportunity to explain them.

*Id.* at 450 (citations omitted).

In *Abovian v. INS*, the logic of *Campos–Sanchez* was taken one step further. There, the IJ made no credibility finding at all. *Abovian*, 219 F.3d at 975. Despite the IJ's silence, "the BIA made an independent adverse credibility finding and denied Abovian's request for asylum and withholding of deportation in part on this basis." *Id.* We overturned the BIA's decision, relying on *Campos–Sanchez*, and concluded that "[t]he BIA violated the [petitioners'] rights to due process by making an independent adverse credibility finding without affording [petitioner] the opportunity to establish his credibility." *Id.* at 980.

In contrast, in a case heavily relied upon by the Government, *Pal v. INS*, 204 F.3d 935 (9th Cir.2000), the BIA made an adverse credibility finding based on reasons divergent from those advanced by the IJ for its adverse credibility determination. *Id.* at 938. We concluded that the IJ's adverse credibility finding put the petition-

er on ample notice that her credibility was at issue and upheld the BIA's ruling. *Id.* at 939. However, in relying upon *Pal* for its argument that Manimbao was sufficiently put on notice that his credibility was in jeopardy, the Government misses the central distinction in this case. While it is true that we upheld the adverse credibility determination made by the BIA in *Pal,* we did so because the IJ had previously made an explicit adverse credibility determination, thus putting the petitioner on sufficient notice that her credibility was in issue, and giving her the opportunity to address the credibility question before the BIA, in briefing and in argument. Conversely, we rejected the BIA's adverse credibility determinations in *Campos–Sanchez* and *Abovian* for the very reason that the petitioners in those cases had not been forewarned by the IJ that their credibility was in question.

■ Here, the IJ neither found Petitioner credible nor remained completely silent as to his credibility. Instead, as in *Aguilera–Cota v. INS,* 914 F.2d at 1381, the IJ found Manimbao's testimony alone insufficient to establish his burden of proof for his asylum claim, presumably because it found him less than credible. However, as we have previously held, credibility findings must be supported by specific, cogent reasons that are substantial and bear a legitimate nexus to the determination that the petitioner did not meet his burden of establishing eligibility for asylum and deportation. *See Chebchoub v. INS,* 257 F.3d 1038, 1043 (9th Cir.2001); *Osorio v. INS,* 99 F.3d 928, 931 (9th Cir. 1996). Minor inconsistencies in the record that do not relate to the basis of an applicant's alleged fear of persecution, go to the heart of the asylum claim, or reveal anything about an asylum applicant's fear for his safety are insufficient to support an adverse credibility finding. *See Cheb-*

*choub,* 257 F.3d at 1043; *Shah v. INS,* 220 F.3d 1062, 1068 (9th Cir.2000); *see also de Leon–Barrios v. INS,* 116 F.3d 391, 393 (9th Cir.1997) ("Generally, minor inconsistencies and minor omissions relating to unimportant facts will not support an adverse credibility finding."). Therefore, a credibility observation made in passing does not constitute a credibility finding sufficient for review under the standards we have developed.

In *Aguilera–Cota,* the IJ questioned the petitioner's credibility because his oral testimony included information not set forth in his asylum application. *Aguilera–Cota,* 914 F.2d at 1382. The IJ found that the petitioner was "not entirely credible" as a witness, and the BIA adopted the IJ's finding. *Id.* at 1382–83 & n. 8. Although we noted that the IJ's credibility determination must be given deference, we also pointed to our case law holding that such a determination must include specific, cogent reasons for disbelief. *Id.* at 1381 (citing *Turcios v. INS,* 821 F.2d 1396, 1399 (9th Cir.1987)); *see also Damaize–Job v. INS,* 787 F.2d 1332, 1338 (9th Cir.1986) (trier of fact who rejects a witness's positive testimony because it lacks credibility must offer a specific, cogent reason for disbelief); *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981) (same). The credibility determination is "the beginning not the end of our inquiry," *Aguilera–Cota,* 914 F.2d at 1381; we must then examine the basis for that determination to ensure it satisfies due process requirements. Thus, a passing reference to insufficiency or disbelief cannot constitute an adequate credibility determination. As was well-stated in *Aguilera–Cota:*

> [O]n a matter as important as this, if an asylum applicant's plea is to be rejected and he is to be returned home—possibly to face renewed threats to his life—simply because an IJ doubts his credibility, the IJ must make a more explicit

and direct finding that he is untruthful than was made here. The mere statement that a petitioner is 'not entirely credible' is not enough.

*Aguilera–Cota,* 914 F.2d at 1383.

As the BIA and the government agreed, the IJ failed to make a legally sufficient credibility determination. In a case such as this, where credibility is a determinative factor, the BIA should have remanded to the IJ to make a proper determination. Instead, the BIA compounded the due process violation when it required corroborative evidence to satisfy Manimbao's burden of proof, a conclusion it recognized was inconsistent with our holding in *Ladha v. INS,* 215 F.3d 889, 899 (9th Cir.2000), in which we held that corroborative evidence is not required where the applicant has been found credible.

Our view that the BIA should have remanded the credibility determination is unremarkable. Under the governing statute, the IJ conducting the deportation proceedings "shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. § 1229a(b)(1). The immigration judge has the duty of developing the record on which his or her decision must be based. *Id.* For that reason, the immigration judge acts as a special inquiry officer. *See* 8 C.F.R. § 1.1(*l*). "These statutory obligations put the immigration judge in a position analogous to that of an administrative law judge.... Like the administrative law judge the immigration judge has the obligation to be informed about the facts relevant to the decision being made." *Fisher v. INS,* 79 F.3d 955, 972 (9th Cir.1996) (en banc) (Noonan, J., dissenting) (citing *Heckler v. Campbell,* 461 U.S. 458, 471, n. 1, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (Brennan, J., concurring)). The IJ is the decisionmaker best equipped to make factual determinations, especially as to credibility.

As we explained in the context of the similarly-situated administrative law judge:

Weight is given [to] the administrative law judge's determinations of credibility for the obvious reason that he or she 'sees the witnesses and hears them testify, while the Board and the reviewing court look only at cold records.' *NLRB v. Walton Manufacturing Co.,* 369 U.S. 404, 408, 82 S.Ct. 853, 855, 7 L.Ed.2d 829 (1962). All aspects of the witness's demeanor—including the expression of his countenance, how he sits or stands, whether he is inordinately nervous, his coloration during critical examination, the modulation or pace of his speech and other non-verbal communication—may convince the observing trial judge that the witness is testifying truthfully or falsely. These same very important factors, however, are entirely unavailable to a reader of the transcript, such as the Board or the Court of Appeals.

*Penasquitos Village, Inc. v. NLRB,* 565 F.2d 1074, 1078–79 (9th Cir.1977).

This is the reason we grant special deference to the IJ's eyewitness observations regarding demeanor evidence. *Paramasamy v. Ashcroft,* 295 F.3d 1047, 2002 WL 1544588, at *3 (9th Cir. July 16, 2002); *Paredes–Urrestarazu v. United States INS,* 36 F.3d 801, 818 & n. 19 (9th Cir. 1994). Moreover, we have long recognized that difficulties in interpretation may result in seeming inconsistencies, especially in cases, such as this, where there is a language barrier. *See Maini v. INS,* 212 F.3d 1167, 1177 (2000) (citations omitted). An appellate body is simply unable to distill the dynamics of an interview, observe whether words were interpreted properly, whether there was hesitation or whether the supposed inconsistency (i.e., whether

one man or four men were shot or killed) was a matter of misinterpretation, confusion, or a true inconsistency.

We conclude, therefore, that the IJ should not be allowed to dance around the question of credibility, leaving the BIA (and eventually this court) to resolve what is quint-essentially an issue for the trier of fact. It is the IJ who is in the best position to determine, conclusively and explicitly, whether or not the petitioner is to be believed. *Canjura–Flores v. INS*, 784 F.2d 885, 888 (9th Cir.1985) ("The Immigration Judge is in the best position to make credibility findings because he views the witness as the testimony is given."); *see also Hartooni*, 21 F.3d at 342 (same). Therefore, if the IJ does not explicitly make an adverse credibility determination, we will not "imply" one. We will presume the petitioner's testimony to be credible, *see Canjura–Flores*, 784 F.2d at 888–89, with all the consequences attached to that determination, *see, e.g., Ladha*, 215 F.3d at 899 (corroborative evidence not required where the applicant has been found credible).[1]

### B. Asylum Eligibility

Because we reject the BIA's adverse credibility determination and find Manimbao credible, we conclude that substantial evidence does not support the BIA's denial of asylum. *See INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The evidence adduced by Manimbao, when properly credited, compels the opposite conclusion— namely, that Manimbao is eligible for such relief. To qualify for asylum, Manimbao must demonstrate persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1101(a)(42)(A); *Elias–Zacarias*, 502 U.S. at 481–82; *Turcios*, 821 F.2d at 1398. Persecution is " 'the infliction of suffering or harm upon those who differ ... in a way regarded as offensive.' " *Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir.1997) (ellipsis in original) (quoting *Sagermark v. INS*, 767 F.2d 645, 649 (9th Cir.1985)).

To establish a well-founded fear of persecution, petitioners must show that their fears are "both objectively reasonable and subjectively genuine." *Ladha*, 215 F.3d at 897 (internal quotation marks and citation omitted). "An alien satisfies the subjective component by credibly testifying that he genuinely fears persecution." *Duarte de Guinac v. INS*, 179 F.3d 1156, 1159 (9th Cir.1999). Manimbao did so here. One way in which he may satisfy the objective component is to demonstrate past persecution, which triggers a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). The INS can rebut this presumption by showing by a preponderance of the evidence that "there has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution." 8 C.F.R. § 208.13(b)(1)(i)(A).

Manimbao testified that he left the Philippines because the NPA had placed his life in jeopardy due to his membership in the Barangay. Manimbao further testified that he and his companions were physically attacked and beaten by the NPA because of their political beliefs, leading to the shooting death of his friend,

---

1. That the issue of credibility was briefed on appeal to the BIA does not change our conclusion. Briefing or no briefing, without a credibility finding by the IJ, neither the BIA nor this Court is in a position to evaluate the petitioner's credibility in a way that comports with due process.

Nick Santos. Additionally, the NPA harassed his family, looting their property and killing their farm animals. We have previously held in other cases in which petitioners were subject to less egregious threats and attacks than the type adduced here that a well-founded fear of persecution was established. *See, e.g., Gui v. INS*, 280 F.3d 1217, 1228–29 (9th Cir.2002) (petitioner subject to hit-and-run incident establishes past persecution); *Garrovillas v. INS*, 156 F.3d 1010, 1016–17 (9th Cir. 1998) (petitioner receiving threats by letter establishes past persecution). Therefore, relying on his testimony, we find that Manimbao has established past persecution.

Because Manimbao demonstrated that he "suffered past persecution, [ ]he is entitled to the legal presumption that [ ]he has a well-founded fear of future persecution." *Borja v. INS*, 175 F.3d 732, 737 (9th Cir. 1999) (en banc); *see* 8 C.F.R. § 208.13(b)(1) (establishing past persecution triggers a rebuttable presumption of a well-founded fear of future persecution). "In order to rebut this presumption, the INS must show by a preponderance of the evidence that conditions in the Philippines have changed to such an extent that[petitioner] no longer has a well-founded fear that [ ]he would be persecuted, should [ ]he return there." *Borja*, 175 F.3d at 738. "Unless the INS can rebut this presumption, [petitioner] is eligible for asylum." *Tarubac v. INS*, 182 F.3d 1114, 1120 (9th Cir.1999).

Here, the BIA erred by improperly placing the burden of proof on Manimbao, stating that "the information contained in the [Philippine Country] *Profile* does not provide corroboration for the respondent's claim, and . . . the respondent has provided no other evidence that would corroborate his claim." *Cf. Tarubac*, 182 F.3d at 1119. Moreover, the BIA failed to provide the individualized analysis we have required to refute a presumption of a well-founded fear. *See Gui*, 280 F.3d at 1229. Having found that Manimbao demonstrated past persecution and that the government has failed to rebut the presumption of a well-founded fear of future persecution, we conclude that Manimbao is statutorily eligible for asylum. The Attorney General should exercise his discretion with respect to whether or not to grant Manimbao such relief. *See* 8 U.S.C. § 1158(b)(1); *Gui*, 280 F.3d at 1230.

## C. Withholding of Deportation

While asylum is discretionary, a petitioner is entitled to withholding of deportation "if the evidence demonstrates a clear probability that the applicant would be persecuted were he to be deported to his home country." *Ladha*, 215 F.3d at 897 (internal quotation marks and citation omitted). A petitioner must show it is "more likely than not that he [or she] will be persecuted on account of one of the five enumerated factors were he to return." *Id.* (internal quotation marks and citations omitted; amendment in original). If a petitioner meets this high standard, the Attorney General must grant withholding of deportation. *Id.*

In light of the long passage of time and indications that Philippine's political terrain may indeed be different than it was in 1992 when Manimbao left, he has not demonstrated a clear probability that his persecution would resume were he deported. Although Manimbao's fear is well-founded, we cannot say that it is more likely than not that he will be persecuted based on his political beliefs should he return to the Philippines. We therefore deny his request for withholding of deportation. *See Gui*, 280 F.3d at 1230.

## IV. Conclusion

Manimbao is eligible for asylum. We remand to the BIA for an exercise of discretion by the Attorney General with respect to whether Manimbao's asylum request should be granted, but deny his request for withholding of deportation.

**PETITION GRANTED IN PART, REMANDED.**

TROTT, Circuit Judge, dissenting:

The majority holds that the BIA violated Manimbao's Fifth Amendment due process rights by rendering an adverse credibility determination after the IJ failed to make an explicit adverse credibility determination in the first instance. I respectfully disagree, and thus, I dissent.

"When the BIA decides an asylum case 'based on an independent, adverse credibility determination, contrary to that reached by the IJ, it must give the petitioner an opportunity to explain any alleged inconsistencies that it raises for the first time.'" *Abovian v. INS*, 219 F.3d 972, 978 (9th Cir.) *amended by* 228 F.3d 1127 *and* 234 F.3d 492 (2000) (quoting *Campos–Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir.1999)). In probing for a due process violation, the crucial inquiry is whether the petitioner had "notice that [his] credibility was questioned or that [he] should provide the BIA with explanations for alleged discrepancies in [his] testimony." *Id.* at 978 (internal quotation and citations omitted). If provided with such notice, the petitioner must explain all inconsistencies in his testimony, not merely those specified by the IJ. *Pal v. INS*, 204 F.3d 935, 939 (9th Cir.2000).

In *Campos–Sanchez*, for example, we concluded that the BIA violated the petitioner's due process rights. We reasoned:

Campos–Sanchez [ ] had not been advised below that his credibility was questionable, or that any discrepancies appeared to exist; nor was he asked to explain any such perceived discrepancies. Quite the contrary, both the INS and the IJ expressly found Campos–Sanchez to be credible. Thus, Campos–Sanchez had no notice of the inconsistencies perceived by the BIA, and no opportunity to explain them.

*Campos–Sanchez,* 164 F.3d at 450. In *Pal,* on the other hand, the IJ's adverse credibility determination put the petitioner on notice that her credibility was questionable and that she should explain the perceived inconsistencies to the BIA. 204 F.3d at 938–39. The BIA's subsequent adverse credibility determination, though based on reasons different than those expressed by the IJ, did not violate Pal's Fifth Amendment due process rights. *Id.*

What I take from these cases is the unremarkable proposition that notice and the opportunity to be heard satisfy the petitioner's right to due process. If a petitioner has notice that his credibility was questioned and a subsequent opportunity to explain any perceived inconsistencies, no due process violation arises from an adverse credibility finding by the BIA. In this case, Manimbao had notice that his credibility was questioned, and he had an opportunity to explain the perceived inconsistencies before the BIA. Due process requires nothing more.

In a section of its opinion entitled "Credibility," the IJ concluded:

### Credibility

The testimony of an applicant for asylum, if sufficiently detailed, consistent and credible in light of general condition in his home country, may be sufficient to sustain the burden of proof without corroboration. In this case, the respondent has offered only the statements in his application and his testimony at today's proceeding. I have several questions

with respect to the respondent's testimony. I do believe that at one point he indicated that three people in addition to Nick Santos were killed. He later changed that to state that they were only wounded. Also, the respondent could not explain how he knew it was the NPA that attacked and he could also not explain how the NPA knew he was in the Barangay. Also, the respondent indicated that he suffered other problems with the NPA but he did not offer specific details as to what these problems were. He indicated only that his family was "disturbed." The respondent has offered, therefore, this testimony that his family was disturbed as the only threat against him since 1983. Also, based on the inconsistencies and the lack of details, *I would find that the respondent's testimony in itself was not sufficiently detailed, plausible and complete to stand alone as adequate support for his claim.*

This record abundantly reflects that the IJ's questioning of Manimbao's credibility put him on notice that his credibility would be an issue before the BIA. Specifically, the IJ warned that Manimbao's testimony was not sufficiently detailed or plausible. "Plausible" means "superficially worthy of belief: CREDIBLE," Webster's Third

New International Dictionary 1736 (1976). The IJ also identified numerous inconsistencies upon which he based this credibility finding. *See Pal,* 204 F.3d at 939, 939 n. 3 (noting Pal had been put on notice that her credibility was in doubt by the IJ as well as an INS assessment officer who questioned her veracity).

Moreover, Manimbao understood the IJ's remarks to call his veracity into question. In his Brief in Support of Appeal before the BIA, Manimbao argued at length that the IJ's adverse credibility determination was not supported by substantial evidence. He explained that any perceived inconsistencies resulted from nervousness and mistake. Manimbao knew all along that his credibility was in question, and he attempted to explain the perceived inconsistencies before the BIA.

In this context, due process required only notice and an opportunity to be heard on the issue of credibility. Manimbao got the process he was due.[1]

---

1. The majority's footnote one is not only dicta, but inappropriate and rash dicta that purports to decide a case not even before us. "Briefing or no briefing," due process is violated? Consider the following hypothetical:

> The IJ makes no credibility determination and does not address the issue of the petitioner's credibility. Upon the BIA's independent review of the record, however, it determines on the face of the record that the petitioner's credibility is the dispositive issue and therefore orders that the petitioner and the INS submit supplemental briefing on the issue of credibility. After receiving and contemplating the supplemental briefing, the BIA denies the petition on credibility grounds.

Does this scenario constitute an abuse of due process by the BIA? The majority would certainly answer in the affirmative; I doubt that answer is correct. As we said in Abovian, "The BIA does have the power to conduct a de novo review of the record, to make its own findings, and independently review the sufficiency of the evidence,"[and] "[w]hen the BIA decides an asylum case based on an independent, adverse credibility determination, contrary to that reached by the IJ, it must give the petitioner an opportunity to explain any perceived inconsistencies that it raises for the first time." 219 F.3d at 978 (internal citations and quotations omitted). Briefing before the BIA provides a petitioner, including Manimbao, notice and an opportunity

to be heard; due process requires nothing more.