Juan **MENDOZA MANIMBAO,**
Petitioner,

v.

John **ASHCROFT, Attorney
General, Respondent.**

No. 00–71329.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 5, 2002.[*]

Filed Aug. 1, 2002.

Amended May 20, 2003.

* This panel unanimously finds this case suitable for decision without oral argument.

Joseph L. Feldun, Korenberg, Abramowitz & Feldun, Encino, CA, for the petitioner.

Cathy Appling, Attorney, Office of Immigration Litigation, U.S. Department of Justice, Civil Division, Washington, DC, for the respondent.

On Petition for Review of an Order of the Board of Immigration Appeals. INS No. A70–184–349.

Before: TROTT, THOMAS, and WARDLAW, Circuit Judges.

Opinion by Judge WARDLAW; Dissent by Judge TROTT.

ORDER AND AMENDED OPINION

## ORDER

The Opinion and dissent filed August 1, 2002, slip op. 10857, and appearing at 298 F.3d 852 (9th Cir.2002) are AMENDED. The attached Amended Opinion and Dissent shall be filed. The panel has voted to deny the petition for panel rehearing and the petition for rehearing en banc. The full court has been advised of the petition for rehearing en banc and no judge requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35. The petition for panel rehearing and the petition for rehearing en banc are DENIED.

## OPINION

WARDLAW, Circuit Judge.

Juan Mendoza Manimbao, a native and citizen of the Philippines, petitions for review of a final order of deportation issued

by the Board of Immigration Appeals ("BIA"), denying his applications for asylum and withholding of deportation under the Immigration and Nationality Act ("INA") sections 208 and 243(h), 8 U.S.C. §§ 1158, 1253(h) (1994), and reinstating a period of voluntary departure. The Immigration Judge ("IJ") failed to make an express credibility finding supported by specific, cogent reasons. Concluding that credibility was the central issue in the case, the BIA substituted itself for the IJ and made its own—adverse—credibility determination. Because, in this case, credibility was the dispositive issue, the BIA erred in (1) failing to remand to the IJ for an express credibility finding, or as a constitutional minimum affording Manimbao due notice that his credibility was at issue and a fair opportunity to respond; and (2) requiring Manimbao to provide corroborative evidence to meet his burden, when, if his testimony were deemed credible, he would have had no obligation to do so.

## I. Background

Manimbao entered the United States on June 19, 1992, as a nonimmigrant visitor, with permission to remain until December 18, 1992. On April 11, 1996, the INS issued an Order to Show Cause charging Manimbao with deportability under section 241(a)(1)(B) of the INA, 8 U.S.C. § 1251(a)(1)(B) (1992), because of his unauthorized presence in the United States.

On August 7, 1996, at deportation proceedings, Manimbao admitted to the factual allegations, conceded his deportability, and applied for asylum, withholding of deportation, and voluntary departure. Manimbao's asylum application stated that sometime in 1978 he joined an organization called the Barangay to assist the government in its campaign against communist rebels, such as the New People's Army

("NPA"). He actively participated in the Barangay's public activities, including taking part in 1983 in the late President Marcos's campaign against communist rebels. The Barangay met with some success, angering the communist rebels. When the NPA learned of the Barangay, it obtained a list of the names of its members. Having found Manimbao on the list, the NPA looted his family's property and killed their farm animals. Later, one night while he was walking with four companions, the group was attacked by heavily armed men. They shot four of his friends, resulting in the death of one, Nick Santos, and injury to the others. Manimbao managed to escape temporarily, but was captured by the armed men and taken to a secluded area where he was interrogated and beaten. The NPA demanded the names of other Barangay members. A neighbor sought help and the military rescued him. The application also stated that if he returned to his home country he would be "killed for sure," as members of the NPA "are still looking for [him]."

At his deportation hearing on January 21, 1997, Manimbao testified through an interpreter that he left the Philippines because the NPA had placed his life in jeopardy due to his membership in the Barangay. He explained that he joined the Barangay, an organization that opposed the NPA, and supported the government, in 1978. In a somewhat confusing colloquy, he stated that "five of us were walking when—when Nick Santos was killed;" four were shot and four escaped. He then stated: "I was the only one not killed or spared." Manimbao surmised the men were members of the NPA because he helped the Barangay and communicated with the military, noting the men asked him "who are the people I was with and if the organization is still alive." He further testified that he had neither informed the attackers that he was a member of the

Barangay nor had they asked him. The IJ asked Manimbao to clarify who was killed and how many were injured the night of the attack by armed men. Manimbao clarified his earlier testimony, stating that Santos had been shot along with three other men and that he (Manimbao) was not killed, because the NPA wanted to interrogate him for additional information about the Barangay. Manimbao also stated that the three men, other than Santos, who had been shot survived. Following this incident, the NPA created problems in his town, harassing his family and the businesspeople. Manimbao believes the NPA will harm him if he returns to his country.

The IJ denied Petitioner's applications for asylum and withholding of deportation, but granted voluntary departure. The IJ correctly recognized that the applicant's testimony alone may sustain his burden of establishing eligibility for asylum. The IJ then seized upon seeming inconsistencies in Manimbao's testimony (all of which actually had been clarified and reconciled within the transcript) to decide that Manimbao's testimony alone was not sufficiently detailed, plausible, and complete to meet his burden. The IJ did not, however, find that Manimbao was not credible.

Both the government and the BIA recognized this flaw in the IJ's decision, but attempted nevertheless to circumvent both BIA and Ninth Circuit law governing the standards for credibility determinations by concluding that the IJ had made an "implicit" finding. The BIA acknowledged "that the credibility of [Manimbao's] testimony is central to this case," and found that the IJ "implicitly" determined Manimbao was not credible. It then scoured the record to find support for the adverse credibility decision the IJ had failed to make. Finally, the BIA dismissed Manimbao's petition for failure "to meet his bur-

den of establishing past persecution or a well-founded fear of [future] persecution...." Chairman Paul Wickham Schmidt dissented:

> The Immigration Judge did not make a credibility finding that satisfies the standards we set forth in *Matter of A–S*, 21 I & N Dec. 1106 (BIA 1998). The majority attempts to remedy this defect by making an adverse credibility finding for the first time on appeal. Ninth Circuit law does not permit us to do this. *Abovian v. INS*, [219 F.3d 972, 978 ] (9th Cir.2000); *Campos–Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir.1999).

Manimbao filed a timely petition for review. He contends that the BIA erred in making an adverse credibility determination for the first time on appeal in violation of his Fifth Amendment right to due process.

## II. Standard of Review

▆▆▆ "We review credibility findings under a substantial evidence standard." *Aguilera–Cota v. United States INS*, 914 F.2d 1375, 1381 (9th Cir.1990). Although we accord substantial deference to an IJ's credibility finding, we will do so only if the IJ has made an express credibility finding and has offered a "specific, cogent reason for any stated disbelief." *Hartooni v. INS*, 21 F.3d 336, 342 (9th Cir.1994). "The IJ must not only articulate the basis for a negative credibility finding, but those reasons must be substantial and bear a legitimate nexus to the finding." *Aguilera–Cota*, 914 F.2d at 1381. "[W]hen the IJ provides specific reasons for the questioning of a witness's credibility, this court may evaluate those reasons to determine whether they are valid grounds upon which to base a finding that the applicant is not credible." *Lopez–Reyes v. INS*, 79 F.3d 908, 911 (9th Cir.1996). When the IJ makes implicit credibility observations in passing, however, this does not constitute

a credibility finding. *See Aguilera–Cota,* 914 F.2d at 1383 ("The mere statement that a petitioner is 'not entirely credible' is not enough.").

### III.  Discussion

■ Petitioner contends that the BIA erred in making an adverse credibility determination for the first time on appeal. Instead of addressing this argument directly, the Government asks us to review the BIA's credibility determination under the substantial evidence standard. We reject the Government's request. In the absence of an express adverse credibility finding by the IJ, the BIA violated Manimbao's right to due process by making an adverse credibility determination without providing him with notice that his credibility was at issue and in what specific respect his credibility was being questioned.

■ It is beyond debate that, to ensure that the substantive law is administered fairly, the Fifth Amendment provides a right to a "full and fair hearing" in deportation cases. *Campos–Sanchez v. INS,* 164 F.3d 448, 450 (9th Cir.1999); 2 Kenneth C. Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.2, at 561 (4th ed.2002); Jack Wasserman, *Immigration Law and Practice* 217 (3d ed.1979); Michael Scaperlanda, *Are We That Far Gone?: Due Process and Secret Deportation Proceedings,* 7 Stan. L. & Pol'y Rev. 23, 25 (1996). Therefore, "[w]hen the BIA decides an asylum case 'based on an independent, adverse, credibility determination, contrary to that reached by the IJ, it must give the petitioner an opportunity to explain any alleged inconsistencies that it raises for the first time.'" *Abovian v. INS,* 219 F.3d 972, 978 (9th Cir.), *amended by* 228 F.3d 1127 *and* 234 F.3d 492 (2000) (quoting *Campos–Sanchez,* 164 F.3d at 450). This holding contemplates that when the IJ has made a credibility deter-

mination, it is subject to review, but not reversal if it was favorable, unless the petitioner is accorded certain due process rights.

In a trilogy of cases, relied upon by both the Government and Manimbao, we elaborated upon these due process requirements. First, in *Campos–Sanchez,* we held that the BIA violated the due process clause when, after both the INS and the IJ expressly found the petitioner credible, the BIA, upon an independent review of the record, denied the petitioner asylum and withholding of deportation based solely on its adverse assessment of his credibility. *Campos–Sanchez,* 164 F.3d at 449–50. We reversed the decision of the BIA, concluding that the Fifth Amendment had been violated:

> Campos–Sanchez, however, had not been advised below that his credibility was questionable, or that any discrepancies appeared to exist; nor was he asked to explain any such perceived discrepancies. Quite the contrary, both the INS and the IJ expressly found Campos–Sanchez to be credible. Thus, Campos–Sanchez had no notice of the inconsistencies perceived by the BIA, and no opportunity to explain them.

*Id.* at 450 (citations omitted).

In *Abovian v. INS,* the logic of *Campos–Sanchez* was taken one step further. There, the IJ made no credibility finding at all. *Abovian,* 219 F.3d at 975. Despite the IJ's silence, "the BIA made an independent adverse credibility finding and denied Abovian's request for asylum and withholding of deportation in part on this basis." *Id.* We overturned the BIA's decision, relying on *Campos–Sanchez,* and concluded that "[t]he BIA violated the [petitioners'] rights to due process by making an independent adverse credibility finding without affording [petitioner] the opportu-

nity to establish his credibility." *Id.* at 980.

In contrast, in a case heavily relied upon by the Government, *Pal v. INS,* 204 F.3d 935 (9th Cir.2000), the BIA made an adverse credibility finding based on reasons divergent from those advanced by the IJ for its adverse credibility determination. *Id.* at 938. We concluded that the IJ's adverse credibility finding put the petitioner on ample notice that her credibility was at issue and upheld the BIA's ruling. *Id.* at 939. However, in relying upon *Pal* for its argument that Manimbao was sufficiently put on notice that his credibility was in jeopardy, the Government misses the central distinction in this case. While it is true that we upheld the adverse credibility determination made by the BIA in *Pal,* we did so because the IJ had previously made an explicit adverse credibility determination, thus putting the petitioner on sufficient notice that her credibility was in issue, and giving her the opportunity to address the credibility question before the BIA, in briefing and in argument. Conversely, we rejected the BIA's adverse credibility determinations in *Campos–Sanchez* and *Abovian* for the very reason that the petitioners in those cases had not been forewarned by the IJ that their credibility was in question.

■ Here, the IJ neither found Petitioner credible nor remained completely silent as to his credibility. Instead, as in *Aguilera–Cota v. INS,* 914 F.2d at 1381, the IJ found Manimbao's testimony alone insufficient to establish his burden of proof for his asylum claim, presumably because it found him less than credible. However, as we have previously held, credibility findings must be supported by specific, cogent reasons that are substantial and bear a legitimate nexus to the determination that the petitioner did not meet his burden of establishing eligibility for asy-

lum and deportation. *See Chebchoub v. INS,* 257 F.3d 1038, 1043 (9th Cir.2001); *Osorio v. INS,* 99 F.3d 928, 931 (9th Cir. 1996). Minor inconsistencies in the record that do not relate to the basis of an applicant's alleged fear of persecution, go to the heart of the asylum claim, or reveal anything about an asylum applicant's fear for his safety are insufficient to support an adverse credibility finding. *See Chebchoub,* 257 F.3d at 1043; *Shah v. INS,* 220 F.3d 1062, 1068 (9th Cir.2000); *see also de Leon–Barrios v. INS,* 116 F.3d 391, 393 (9th Cir.1997) ("Generally, minor inconsistencies and minor omissions relating to unimportant facts will not support an adverse credibility finding."). Therefore, a credibility observation made in passing does not constitute a credibility finding sufficient for review under the standards we have developed.

In *Aguilera–Cota,* the IJ questioned the petitioner's credibility because his oral testimony included information not set forth in his asylum application. *Aguilera–Cota,* 914 F.2d at 1382. The IJ found that the petitioner was "not entirely credible" as a witness, and the BIA adopted the IJ's finding. *Id.* at 1382–83 & n. 8. Although we noted that the IJ's credibility determination must be given deference, we also pointed to our case law holding that such a determination must include specific, cogent reasons for disbelief. *Id.* at 1381 (citing *Turcios v. INS,* 821 F.2d 1396, 1399 (9th Cir.1987)); *see also Damaize–Job v. INS,* 787 F.2d 1332, 1338 (9th Cir.1986) (trier of fact who rejects a witness's positive testimony because it lacks credibility must offer a specific, cogent reason for disbelief); *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981) (same). The credibility determination is "the beginning not the end of our inquiry," *Aguilera–Cota,* 914 F.2d at 1381; we must then examine the basis for that determination to ensure it satisfies due

process requirements. Thus, a passing reference to insufficiency or disbelief cannot constitute an adequate credibility determination. As was well-stated in *Aguilera–Cota:*

> [O]n a matter as important as this, if an asylum applicant's plea is to be rejected and he is to be returned home—possibly to face renewed threats to his life—simply because an IJ doubts his credibility, the IJ must make a more explicit and direct finding that he is untruthful than was made here. The mere statement that a petitioner is 'not entirely credible' is not enough.

*Aguilera–Cota,* 914 F.2d at 1383.

As the BIA and the government agreed, the IJ failed to make a legally sufficient credibility determination. In a case such as this, where credibility is a determinative factor, the BIA should have remanded to the IJ to make a legally sufficient determination, or as a constitutional minimum, afforded Manimbao notice that his credibility was at issue and an opportunity to respond to the bases for attack on his credibility. Instead, the BIA compounded the due process violation when it required corroborative evidence to satisfy Manimbao's burden of proof, a conclusion it recognized was inconsistent with our holding in *Ladha v. INS,* 215 F.3d 889, 899 (9th Cir.2000), in which we held that corroborative evidence is not required where the applicant has been found credible.

Thus, on remand, the BIA has two options: It may remand the matter to the IJ to conduct a "full and fair" inquiry into Manimbao's credibility, and to issue a legally sufficient credibility determination. Alternatively, the BIA may provide Manimbao with proper notice that it considers his credibility at issue, even though the IJ failed to reach the issue.

The first option is obviously the most advisable, as the IJ is in a vastly superior position to assess an asylum applicant's credibility in the first instance. Because credibility is quintessentially an issue for the trier of fact, the IJ is in the best position to determine, conclusively and explicitly, whether or not the petitioner is to be believed. *Canjura–Flores v. INS,* 784 F.2d 885, 888 (9th Cir.1985) ("The Immigration Judge is in the best position to make credibility findings because he views the witness as the testimony is given."); *see also Hartooni,* 21 F.3d at 342 (same). We note in this regard that under the most recent INS regulations, the BIA would have no choice but to remand to the IJ for an initial credibility determination, as the BIA is now limited to reviewing the IJ's factual findings, including credibility determinations, for clear error. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2003).

Under the governing statute, the IJ conducting the deportation proceedings "shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. § 1229a(b)(1). The immigration judge has the duty of developing the record on which his or her decision must be based. *Id.* For that reason, the immigration judge acts as a special inquiry officer. *See* 8 C.F.R. § 1.1(*l*). "These statutory obligations put the immigration judge in a position analogous to that of an administrative law judge.... Like the administrative law judge the immigration judge has the obligation to be informed about the facts relevant to the decision being made." *Fisher v. INS,* 79 F.3d 955, 972 (9th Cir.1996) (en banc) (Noonan, J., dissenting) (citing *Heckler v. Campbell,* 461 U.S. 458, 471, n. 1, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (Brennan, J., concurring)). The IJ is the decisionmaker best equipped to make factual determinations, especially as to credibility.

As we explained in the context of the similarly-situated administrative law judge:

Weight is given [to] the administrative law judge's determinations of credibility for the obvious reason that he or she 'sees the witnesses and hears them testify, while the Board and the reviewing court look only at cold records.' *NLRB v. Walton Manufacturing Co.*, 369 U.S. 404, 408, 82 S.Ct. 853, 855, 7 L.Ed.2d 829 (1962). All aspects of the witness's demeanor—including the expression of his countenance, how he sits or stands, whether he is inordinately nervous, his coloration during critical examination, the modulation or pace of his speech and other non-verbal communication—may convince the observing trial judge that the witness is testifying truthfully or falsely. These same very important factors, however, are entirely unavailable to a reader of the transcript, such as the Board or the Court of Appeals.

*Penasquitos Village, Inc. v. NLRB*, 565 F.2d 1074, 1078–79 (9th Cir.1977).

This is the reason we grant special deference to the IJ's eyewitness observations regarding demeanor evidence. *Paramasamy v. Ashcroft*, 295 F.3d 1047, 1050 (9th Cir.2002); *Paredes–Urrestarazu v. United States INS*, 36 F.3d 801, 818 & n. 19 (9th Cir.1994). Moreover, we have long recognized that difficulties in interpretation may result in seeming inconsistencies, especially in cases, such as this, where there is a language barrier. *See Maini v. INS*, 212 F.3d 1167, 1177 (2000) (citations omitted). An appellate body is simply unable to distill the dynamics of an interview, observe whether words were interpreted properly, whether there was hesitation or whether the supposed inconsistency (i.e., whether one man or four men were shot or killed)

was a matter of misinterpretation, confusion, or a true inconsistency.

If the BIA chooses the second option, making its own credibility determination without first remanding to the IJ, it must provide Manimbao with notice and an opportunity to respond, to allow for adequate briefing of the credibility issues that may form the basis on an adverse credibility determination. Such notice should be sufficiently specific to satisfy Manimbao's due process right to notice, and should include "specific, cogent reason[s]" for any concerns the BIA has. *Hartooni*, 21 F.3d at 342. A boilerplate notice that Manimbao's credibility is at issue would fall short of this standard. Furthermore, as a matter of law, we could not grant such a credibility finding by the BIA the special deference we accord a credibility finding by the IJ. *See Paramasamy*, 295 F.3d at 1050.

We conclude, therefore, that because the IJ failed to make a sufficient credibility determination, the BIA violated Manimbao's right to due process by "implying" such a finding on review without either remanding for a legally sufficient determination or otherwise affording him notice and an opportunity to respond. Otherwise, the BIA is required to presume the petitioner's testimony to be credible, *see Canjura–Flores*, 784 F.2d at 888–89, with all the consequences attached to that determination, *see, e.g., Ladha*, 215 F.3d at 899 (corroborative evidence not required where the applicant has been found credible).[1]

## IV. Conclusion

Because we conclude that the BIA violated Manimbao's due process rights when it improperly resolved the issue of his

---

1. That the some of the issues regarding credibility were addressed in Manimbao's brief to the BIA does not change our conclusion. Absent proper notice from the IJ or BIA, Man-

imbao lacked proper notice that his credibility was at issue, and therefore lacked constitutionally sufficient opportunity to respond to any attacks on his credibility.

credibility, we remand this matter to the BIA. On remand, the BIA can either accept Manimbao's story as credible (and determine on that basis whether he meets the statutory eligibility requirements for asylum, and if so, whether he should be granted asylum), or may conduct further proceedings consistent with this opinion.

We do not reach the issue of Manimbao's statutory eligibility for asylum because the BIA never reached it. Rather, we remand this issue for an initial determination by the BIA. *INS v. Ventura,* 537 U.S. 12, 123 S.Ct. 353, 355, 154 L.Ed.2d 272 (2002).

**PETITION GRANTED IN PART, REMANDED.**

TROTT, Circuit Judge, dissenting.

The majority holds that the BIA violated Manimbao's Fifth Amendment due process rights by rendering an adverse credibility determination after the IJ failed to make an explicit adverse credibility determination in the first instance. I respectfully disagree, and thus, I dissent.

"When the BIA decides an asylum case 'based on an independent, adverse credibility determination, contrary to that reached by the IJ, it must give the petitioner an opportunity to explain any alleged inconsistencies that it raises for the first time.'" *Abovian v. INS,* 219 F.3d 972, 978 (9th Cir.) *amended by* 228 F.3d 1127 *and* 234 F.3d 492 (2000) (quoting *Campos–Sanchez v. INS,* 164 F.3d 448, 450 (9th Cir.1999)). In probing for a due process violation, the crucial inquiry is whether the petitioner had "notice that [his] credibility was questioned or that [he] should provide the BIA with explanations for alleged discrepancies in [his] testimony." *Id.* at 978 (internal quotation and citations omitted). If provided with such notice, the petitioner must explain all inconsistencies in his testimony,

not merely those specified by the IJ. *Pal v. INS,* 204 F.3d 935, 939 (9th Cir.2000).

In *Campos–Sanchez,* for example, we concluded that the BIA violated the petitioner's due process rights. We reasoned:

> Campos-Sanchez [ ] had not been advised below that his credibility was questionable, or that any discrepancies appeared to exist; nor was he asked to explain any such perceived discrepancies. Quite the contrary, both the INS and the IJ expressly found Campos–Sanchez to be credible. Thus, Campos–Sanchez had no notice of the inconsistencies perceived by the BIA, and no opportunity to explain them.

*Campos–Sanchez,* 164 F.3d at 450. In *Pal,* on the other hand, the IJ's adverse credibility determination put the petitioner on notice that her credibility was questionable and that she should explain the perceived inconsistencies to the BIA. 204 F.3d at 938–39. The BIA's subsequent adverse credibility determination, though based on reasons different than those expressed by the IJ, did not violate Pal's Fifth Amendment due process rights. *Id.*

What I take from these cases is the unremarkable proposition that notice and the opportunity to be heard satisfy the petitioner's right to due process. If a petitioner has notice that his credibility was questioned and a subsequent opportunity to explain any perceived inconsistencies, no due process violation arises from an adverse credibility finding by the BIA. In this case, Manimbao had notice that his credibility was questioned, and he had an opportunity to explain the perceived inconsistencies before the BIA. Due process requires nothing more.

In a section of its opinion entitled "Credibility," the IJ concluded:

*Credibility*

The testimony of an applicant for asylum, if sufficiently detailed, consistent and credible in light of general condition in his home country, may be sufficient to sustain the burden of proof without corroboration. In this case, the respondent has offered only the statements in his application and his testimony at today's proceeding. I have several questions with respect to the respondent's testimony. I do believe that at one point he indicated that three people in addition to Nick Santos were killed. He later changed that to state that they were only wounded.

Also, the respondent could not explain how he knew it was the NPA that attacked and he could also not explain how the NPA knew he was in the Barangay. Also, the respondent indicated that he suffered other problems with the NPA but he did not offer specific details as to what these problems were. He indicated only that his family was "disturbed." The respondent has offered, therefore, this testimony that his family was disturbed as the only threat against him since 1983. Also, based on the inconsistencies and the lack of details, *I would find that the respondent's testimony in itself was not sufficiently detailed, plausible and complete to stand alone as adequate support for his claim.*

This record abundantly reflects that the IJ's questioning of Manimbao's credibility put him on notice that his credibility would be an issue before the BIA. Specifically, the IJ warned that Manimbao's testimony was not sufficiently detailed or plausible. "Plausible" means "superficially worthy of belief: CREDIBLE," Webster's Third New International Dictionary 1736 (1976). The IJ also identified numerous inconsistencies upon which he based this credibility finding. *See Pal,* 204 F.3d at 939, 939

n. 3 (noting Pal had been put on notice that her credibility was in doubt by the IJ as well as an INS assessment officer who questioned her veracity).

Moreover, Manimbao understood the IJ's remarks to call his veracity into question. In his Brief in Support of Appeal before the BIA, Manimbao argued at length that the IJ's adverse credibility determination was not supported by substantial evidence. He explained that any perceived inconsistencies resulted from nervousness and mistake. Manimbao knew all along that his credibility was in question, and he attempted to explain the perceived inconsistencies before the BIA.

In this context, due process required only notice and an opportunity to be heard on the issue of credibility. Manimbao got the process he was due.