Samya Siraje MOHAMMED,
Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 03–70065.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 4, 2004.

Decided Aug. 24, 2004.

Edward W. Pilot, Esq., Beverly Hills, CA, for Petitioner.

Regional Counsel, Laguna Niguel, CA, CAC–District Counsel, Esq., Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Ronald E. Le-Fevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, David Dauenheimer, Patricia A. Smith, U.S. Department of Justice, Washington, DC, for Respondent.

Before: REINHARDT, NOONAN, and CLIFTON, Circuit Judges.

## MEMORANDUM *

Samya Siraje Mohammed ("Mohammed"), a citizen of Ethiopia, appeals a decision of the Board of Immigration Appeals ("BIA") denying her application for asylum and withholding of removal. Because the BIA summarily affirmed the decision of the Immigration Judge ("IJ"), we review the IJ's decision as if it were that of the BIA. *See Al–Harbi v. INS,* 242 F.3d 882, 887–88 (9th Cir.2001).

The IJ denied Mohammed relief because of an adverse credibility determination. This determination was based on a number of reasons, all of which were either factually or legally erroneous. Factually, the IJ faulted Mohammed because of evidence the IJ said was missing from Mohammed's testimony and her application. However, not only was this evidence in the record, it was particularly important, like Mohammed's testimony about ethnic cleansing. Furthermore, the IJ erred by failing to discuss Mohammed's corroborating evidence.

Legally, the IJ made her determination on grounds that are impermissible under Ninth Circuit law. For example, the IJ erroneously based her decision in part on a series of minor inconsistencies in dates. *See, e.g., Bandari v. INS,*

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

227 F.3d 1160, 1166 (9th Cir.2000). This was especially inappropriate when the discrepancies most likely arose from confusion between the Ethiopian and Gregorian calendars. The IJ also discredited Mohammed by substituting her own personal speculation for Mohammed's reasonable and consistent explanations in three notable instances: (1) The IJ did not believe Mohammed would leave Ethiopia briefly to go to surrounding countries if she was actually persecuted despite Mohammed's explanation that she was looking for her husband, who might have fled Ethiopia, so she could leave her children with him. (2) The IJ also disbelieved Mohammed because the government did not timely follow up on one of its threats, ignoring Mohammed's explanation that the government could not find her because she was in hiding. (3) The IJ also found it implausible that Mohammed was able to obtain an exit visa, even though Mohammed indicated that she had no contact with the government and others obtained the documents for her. Such speculation is counter to law and cannot be the basis of an adverse credibility determination. *Lopez–Reyes v. INS*, 79 F.3d 908, 912 (9th Cir. 1996); *Hoxha v. Ashcroft*, 319 F.3d 1179, 1184 (9th Cir.2003). Additionally, much of the IJ's conjecture was based on culturally-biased assumptions and did not go to the heart of Mohammed's asylum claim, which was also improper. *See, e.g., Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 660 (9th Cir.2003); *Abovian v. INS*, 219 F.3d 972, 979 (9th Cir.2000). With respect to the failure to provide information regarding her arrest by the Ethiopian authorities, the omission is insufficient to support an adverse credibility determination, particularly in light of the fact that Mohammed did check a box asking whether she or any member of her family had been arrested, another asking a similar question about detention, a third about interrogation, and a fourth regarding imprisonment (although leaving a box unchecked with respect to conviction and sentencing). Finally, the IJ declared that Mohammed was evasive and ambiguous, without citing any illustrations. However, the IJ must give specific examples if an adverse credibility determination is based on demeanor evidence. *See, e.g., Mendoza Manimbao*, 329 F.3d at 658.

We also find the IJ's treatment of Mohammed during the hearing patently offensive. Throughout the proceedings, the IJ addressed Mohammed with incredulity and contempt. In one particularly egregious example, the IJ accused Mohammed of turning her children into "other people's slaves" because Mohammed left some of her children in the care of the Italian family that took Mohammed after the government "cleansed" her ancestral home, employed her for ten years, and helped her escape to the United States. The IJ went on to badger Mohammed, "So you abandoned all five children to save yourself?", repeated the slavery accusation in her oral decision, and used Mohammed's denials as a further basis for the adverse credibility determination. Such behavior is intolerable and undermines the integrity of the proceedings. *See Garrovillas v. INS*, 156 F.3d 1010, 1015 (9th Cir.1998). Therefore, upon remand, we order that the case be assigned to a different IJ who will treat Mohammed with impartiality and respect.

For the foregoing reasons, we GRANT the petition, REVERSE the IJ's adverse credibility determination, and REMAND for further proceedings before another Immigration Judge on Mohammed's asylum and withholding claims.

**PETITION GRANTED; REVERSED; MATTER REMANDED.**