**Khalima Taskanievna RAMAZANOVA, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 03–70188.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 2004.

Decided Aug. 30, 2004.

**510**

William D. Evans, Esq., Pasadena, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, District Counsel, Esq., Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Donald A. Couvillon, Esq., Terri J. Scadron, Esq., Earle B. Wilson, Esq., Anthony W. Norwood, Esq., U.S. Department of Justice, Washington, DC, for Respondent.

Before: REINHARDT, NOONAN, and CLIFTON, Circuit Judges.

## MEMORANDUM *

Khalima Taskanievna Ramazanova, a citizen and native of Kazakhstan, petitions for review of the Board of Immigration Appeals' (BIA) summary affirmance of an Immigration Judge's (IJ) denial of her applications for asylum, withholding of removal, and relief under the Convention Against Torture. As the parties are familiar with the facts, procedural history and

arguments, we cite them only as necessary.

■ We first consider the IJ's adverse credibility determination. We conclude that the IJ's decision is not "based on 'specific, cogent reasons,' which are substantial and 'bear a legitimate nexus to the finding.'" *Chebchoub v. INS*, 257 F.3d 1038, 1043 (9th Cir.2001) (internal brackets omitted) (quoting *Cordon–Garcia v. INS*, 204 F.3d 985, 993 (9th Cir.2000)). For instance, the IJ incorrectly found that Ramazanova's written declaration exaggerated the police's unwillingness to help her and was inconsistent with her hearing testimony. Although Ramazanova's testimony reveals that the police never explicitly stated that they would not aid a Jew, she consistently testified that their attitude throughout her repeated visits to the station was one of contempt. It is also undisputed that the police never investigated the attacks on her or her son, and limited their assistance to the observation that she should be careful after dark.

■ The IJ also incorrectly based his adverse credibility determination on speculation that Ramazanova would have made a copy of her letter criticizing the government if such a letter did indeed exist. However, Ramazanova testified that she wrote the letter by hand immediately after the KNB took her into custody for interrogation and warned her against further criticism of the government. A handwritten letter is not so simple to copy, and she may not have wanted to retain a copy that might have been found in her possession. Her failure to copy such a letter under these circumstances is not so peculiar or unexplainable as to render her testimony incredible. Because the IJ's reasoning is little more than speculation, it cannot form

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

the basis of an adverse credibility finding. *See Maini v. INS,* 212 F.3d 1167, 1175 (9th Cir.2000).

■ The IJ's doubts regarding Ramazanova's three-day detention by the KNB are similarly speculative. The IJ could not understand why Ramazona was not fired, or imprisoned, or sent to a mental hospital after she refused to sign the KNB document. Because there is no evidence in the record describing how the KNB normally operates, the IJ had no basis for his conclusion that if the incident had actually happened, Ramazanova would have endured more severe persecution.

Finally, the IJ took issue with Ramazanova's testimony regarding her escape from Kazakhstan. A review of her testimony, however, reveals that Ramazanova never claimed that the KNB was interested in preventing her from leaving Kazakhstan. In fact, Ramazanova testified that a KNB interrogator told her that Jews were not welcome and should leave. Thus, whether or not Ramazanova had to bribe a customs official in order to leave the country does not to go to the heart of her claim and is not the proper basis for a credibility determination. *See Manimbao v. Ashcroft,* 329 F.3d 655, 660 (9th Cir.2003). Therefore, we reverse the IJ's adverse credibility determination.

The IJ also found that Ramazanova's testimony about attacks that she and her son faced was not sufficient to establish past persecution or sustain a well-founded fear of future persecution.[1] Because we hold that the record compels a finding of a well-founded fear of future persecution, we need not decide Ramazanova's past persecution claim.

■ Ramazanova was attacked in the Jewish portion of the cemetery while kneeling at her mother's grave by neo-Nazis thugs wearing swastikas. The thugs called her a kike and told her not to dare go to the police. She was beaten until she lost consciousness. The officials at the public cemetery refused to help Ramazanova because she was "a dirty Jew." She then went to an emergency medical clinic and later a local clinic for treatment. Her injuries were so severe she had to take medical leave for three weeks to recover. Her son was subsequently beaten on four occasions by the same gang of thugs. While beating him, the thugs made anti-Semitic remarks.

In response to this treatment, Ramazanova and her son sought help from the police on four occasions. Instead of aiding her, the police treated Ramazanova with contempt, told her not to bother them because she was Jewish, never investigated any of her or her son's claims, and told her, "[i]f you don't like it here, then just leave."

Ramazanova has produced "credible, direct, and specific evidence in the record that would support a reasonable fear of persecution" on account of her Jewish faith if she returned to Kazakhstan. *See Singh v. INS,* 134 F.3d 962, 966 (9th Cir.1998) (internal citation and punctuation omitted). The Kazak authorities have refused to in-

---

1. Because the IJ resolved these issues, there is no need to remand under *INS v. Ventura,* 537 U.S. 12, 14–17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) in order to allow him to consider them again. *See Andia v. Ashcroft,* 359 F.3d 1181, 1184 (9th Cir.2004) ("In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency. If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case."); *Mendoza Manimbao v. Ashcroft,* 329 F.3d 655, 663 (9th Cir.2003) ("We do not reach the issue of Manimbao's statutory eligibility for asylum because the BIA never reached it. Rather, we remand this issue for an initial determination by the BIA.")

vestigate Ramazanova and her son's five complaints of violent, anti-Semitic attacks. A ten percent chance of persecution can constitute a well-founded fear, and Ramazanova surpasses this threshold. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 431, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Leiva–Montalvo v. INS,* 173 F.3d 749 (9th Cir. 1999). However, we cannot say that the record compels a finding that she is more likely than not to face persecution upon her return, which would be required in order to grant her withholding or relief under CAT. *See Al–Harbi v. INS,* 242 F.3d 882, 888 (9th Cir.2001).

We further note that because we hold that Ramazanova is credible, in exercising his discretion, the Attorney General should take into account her entire testimony, including how she was imprisoned for three days without food and water because of political remarks she made and a political letter she wrote about the protection of Jews, and that her friends have subsequently written her to tell her that she would be imprisoned if she returns.

For the foregoing reasons, we **GRANT** the petition for review and **REVERSE** the IJ's adverse credibility determination. We also **REVERSE** the IJ's holding that Ramazanova did not have a well-founded fear of future persecution and hold that she is eligible for asylum. We **AFFIRM** the IJ's holding that Ramazanova is not entitled to withholding or relief under CAT. We **RE-MAND** for the Attorney General to exercise his discretion as to whether to grant asylum.

