**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

CHENGJUN WU,

Petitioner,

v.

ERIC H. HOLDER, Jr., Attorney General,

Respondent.

No. 06-75313

Agency No. A097-867-637

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 11, 2011[**]
Pasadena, California

Before: GOODWIN, D.W. NELSON, and N.R. SMITH, Circuit Judges.

Chengjun Wu ("Wu") petitions for review of the Board of Immigration

Appeals' ("BIA") denial of her applications for asylum, withholding of removal,

and relief under the Convention Against Torture ("CAT"). The BIA affirmed the

Immigration Judge's ("IJ") denial of Wu's claims related to political persecution

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]   The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

based on a finding of adverse credibility. The BIA also affirmed the IJ's denial of Wu's claims related to religious persecution, because Wu's credibility was already in doubt and she failed to provide corroborating evidence of her Christian faith. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1), and we grant Wu's petition for review.

We review adverse credibility determinations for substantial evidence. *Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir. 2002) (citation omitted). Under this standard, the BIA's determinations are to be upheld if they are supported by "reasonable, substantial and probative evidence" in the record, *Kumar v. Gonzales*, 444 F.3d 1043, 1049 (9th Cir. 2006) (citations omitted), but "[m]inor inconsistencies in the record that do not relate to the basis of an applicant's alleged fear of persecution, go to the heart of the asylum claim, or reveal anything about an asylum applicant's fear for his safety are insufficient to support an adverse credibility finding," *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 660 (9th Cir. 2003) (citations omitted).[1] When, as here, the BIA does not express disagreement with any portion of the IJ's decision, cites *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), and adds its own review of the evidence and the law, we review

---

[1] This is a pre-REAL ID Act application.

2

both the BIA's and the IJ's decisions. *See Joseph v. Holder*, 600 F.3d 1235, 1239-40 (9th Cir. 2010).

In this case, the IJ's adverse credibility determination is based on supposed inconsistencies between Wu's written application and testimony related to (1) when an intra-uterine device ("IUD") was forcibly implanted in her body surrounding two forced abortions[2] and (2) the date petitioner was arrested by Chinese authorities during a family church meeting.

The IJ's first finding is simply incorrect. Wu's written application indicated that she was forced to have her first abortion and have an IUD implanted in 1985. After that time, the IUD caused various health problems, so it was eventually taken out. Wu got pregnant again in 1994, when she was forced to have her second abortion and pay a fine. When the government attorney cross-examined Wu before the IJ, she was asked if the IUD was implanted on the same day as her first abortion. Speaking through a translator, Wu responded that the IUD was implanted "immediately" after the first abortion. Upon further questioning, Wu clarified that the IUD was implanted the "second time," after she "went back to the

---

[2] "[A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization . . . shall be deemed to have been persecuted on account of political opinion."  8 U.S.C. § 1101(a)(42).

3

hospital." On the day of the first abortion, Wu testified that "[she] could not take it. It was so painful [she] could not have the IUD." After she developed health problems, the IUD was removed and Wu got pregnant again.

The only plausible interpretation of Wu's testimony is that it was consistent with her written statement. When asked to clarify what she meant by the word "immediately," Wu said that she went back to the hospital for a second visit for the implantation of the IUD. Because of health problems related to the IUD, it was later removed, and she subsequently got pregnant again. The chronology of Wu's story–from the first forced abortion to the implantation and removal of the IUD to the second abortion–remained the same.

The IJ's strained interpretation of Wu's testimony is based entirely on ambiguity in the word "immediately," but Wu's meaning was made clear by her subsequent testimony. It was too painful for her to receive the IUD on the same day as the first abortion, so she went back to the hospital a "second time" for that procedure. As Wu testified, "After the IUD was placed, it was later removed. Afterwards I was pregnant." In other words, for the IJ to think that "immediately" meant "the same day" and "second time" meant "second abortion," she had to ignore the rest of Wu's testimony. Wu never said that she received an IUD after the second forced abortion, which took place almost a decade after the first.

4

Basing an adverse credibility determination on an applicant's fine-grained word usage is particularly inappropriate in cases, such as this, where there is an obvious language barrier. *Mendoza Manimbao*, 329 F.3d at 662 (citations omitted). Wu's preferred language is Mandarin Chinese, and she used a translator throughout the proceedings.

Even if the IJ were correct that there was an inconsistency in Wu's testimony, the IJ was obligated to consider and address Wu's explanation for that discrepancy. *Soto-Olarte v. Holder*, 555 F.3d 1089, 1091 (9th Cir. 2009). The "lack of consideration given to [Wu's] proffered explanation was error and prevents the underlying inconsistency from serving as substantial evidence to support the IJ's adverse credibility finding." *Id.* (citations omitted). Instead of addressing Wu's explanation for why she did not receive the IUD on the same day as the first abortion, the IJ once again ignored Wu's testimony. The IJ's oral decision said that "[a]n invasive abortion[] obviously causes the fetus to be aborted and brought out, thinning of the uterus wall lining, traumatic body treatment, the lining of the uterus, thin and raw, how an IUD would be placed in a person's body 'immediately' after is of question." This is precisely the explanation that Wu offered. The IJ cannot simply ignore that explanation and then use it to undermine Wu's credibility. The IJ's finding is not supported by substantial evidence.

5

The same is true of the only other basis for the IJ's adverse credibility determination, which has to do with the date petitioner was arrested by Chinese authorities during a family church meeting. Petitioner's written statement attached to her asylum application indicated that her arrest took place on April 27, 2003, but she testified that the arrest happened on April 27, 2002. We have made it clear that minor inconsistencies in the record cannot support an adverse credibility finding. A simple mistake of one year, especially where the date is correct as to day and month, is the very definition of a minor inconsistency. *See Bandari v. INS*, 227 F.3d 1160, 1166 (9th Cir. 2000).

Because neither of the IJ's findings in support of his adverse credibility determination constitutes substantial evidence, we grant the petition and remand to the agency to consider whether Wu, now considered credible, has established eligibility for asylum, withholding of removal, and relief under CAT.

On remand, the BIA should take note of the fact that the IJ should not have demanded corroborating evidence regarding Wu's religious faith. *See Gui v. INS*, 280 F.3d 1217, 1227 (9th Cir. 2002) ("[W]here allegations are otherwise unrefuted and credible, the IJ may not require corroboration of claims.") (citing *Ladha v. INS*, 215 F.3d 889, 899 (9th Cir.2000)).

Petition for review **GRANTED**; **REMANDED** to the BIA for further proceedings consistent with this disposition.