**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 12 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| YOUGUANG CHENG, | No. 10-71507 |
| Petitioner, | |
| v. | Agency No. A097-881-410 |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 6, 2014[**]
Pasadena, California

Before: PREGERSON, MURPHY[***], and BERZON, Circuit Judges.

Youguang Cheng, a native and citizen of China, petitions for review of the

Board of Immigration Appeals' ("BIA") order affirming an Immigration Judge's

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Michael R. Murphy, Senior Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

("IJ") decision denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We have jurisdiction pursuant to 8 U.S.C. § 1252. We review factual findings for substantial evidence, *Tekle v. Mukasey*, 533 F.3d 1044, 1051 (9th Cir. 2008), and we grant the petition for review.

1. *The BIA's adverse credibility determination is not supported by substantial evidence.*

Substantial evidence does not support the BIA's adverse credibility determination, which was based on perceived inconsistencies in Cheng's testimony and asylum application regarding his first alleged incident with the police. Any inconsistency concerning precisely where on his upper body—whether on his shoulder or neck—Cheng was beaten by the police with a baton is minor. *See Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 660 (9th Cir. 2003) (minor inconsistencies that do not go to the heart of the claim are insufficient to support an adverse credibility finding). Likewise, Cheng's testimony that the baton was electrified, which was not set forth in his asylum application, does not support an adverse credibility finding. *See Lopez-Reyes v. INS*, 79 F.3d 908, 911 (9th Cir. 1996) ("[A]n applicant's testimony is not per se lacking in credibility simply because it includes details that are not set forth in the asylum application.").

2

Moreover, in his asylum application, Cheng used the words "slapped" and "beat" interchangeably; there is no inconsistency with his hearing testimony in which he stated that he was beaten, but did not specifically testify that he was slapped.

Similarly, substantial evidence does not support the BIA's adverse credibility finding based on perceived inconsistencies in Cheng's testimony and asylum application regarding his second alleged incident with the police. In his direct and cross examination, Cheng clarified that during his second alleged incident with police, he was beaten with an electric baton once—not more than once, as he stated in his asylum application. He was not asked why he stated in his asylum application that he was shocked with the electrified baton more than once. Because he was not asked to explain why his testimony was different from his asylum application, this perceived inconsistency cannot support an adverse credibility finding. *See Soto-Olarte v. Holder*, 555 F.3d 1089, 1092 (9th Cir. 2009). Moreover, where an asylum applicant "gives one account of persecution but then revises his story so as to lessen the degree of persecution he experienced rather than to increase it, the discrepancy generally does not support an adverse credibility finding." *Stoyanov v. INS*, 172 F.3d 731, 736 (9th Cir. 1999) (internal quotation marks omitted).

We also note that there were major problems with the translator at Cheng's hearing, despite the IJ's finding to the contrary. Even if Cheng understood the translator, the translator apparently did not understand Cheng at times and he failed to translate Cheng's entire testimony.[1] We find the translation errors troubling, and note that they may well account for some of the confusion in Cheng's testimony. *See Mendoza Manimbao*, 329 F.3d at 662 ("[W]e have long recognized that difficulties in interpretation may result in seeming inconsistencies, especially in cases, such as this, where there is a language barrier."); *He v. Ashcroft,* 328 F.3d

---

[1] For example, when Cheng was asked by government counsel how he arrived in the United States, he was translated as saying all the following: (1) he flew from Hong Kong to Russia to Cuba; (2) there was a transit "layoff" in Cuba on the way from Hong Kong to Russia; (3) he flew from Hong Kong to Cuba to Moscow; (4) and, again, he flew from Hong Kong to Russia to Cuba. When asked if he went "from Hong Kong to Russia to Cuba, and back to Russia," he replied in the affirmative. When asked where he flew after the second time he was in Russia, Cheng replied that he did not go back to Russia, but went "to Moscow and then crossed the border to San Diego." Immediately after stating that he understood the translator, Cheng again affirmed that he flew from Russia to Cuba and back to Russia. It was not until Cheng's attorney stepped in, that it was extrapolated that Cheng was saying "Mexico," not "Moscow." The interpreter acknowledged that he thought Cheng had said "Moscow," not "Mexico."

More disturbingly, at one point in the hearing, the translator failed to translate Cheng's entire testimony. Evidently believing that Cheng had responded at greater length than the translator related, the IJ asked the translator if Cheng said anything else. The translator answered that he recited "*basically* what Cheng said." Even after the IJ admonished the translator for failing to relate Cheng's entire testimony, the IJ again caught the translator omitting part of Cheng's statement.

4

593, 598 (9th Cir. 2003) ("[F]aulty or unreliable translations can undermine the evidence on which an adverse credibility determination is based.").

The BIA affirmed on the basis of the IJ's adverse credibility finding alone, and did not make a determination on the merits of Cheng's asylum and withholding of removal claims. Because we find that substantial evidence does not support the BIA's adverse credibility determination, we remand to the BIA to address the merits of Cheng's asylum and withholding of removal claims. *See Tekle*, 533 F.3d at 1056.

> 2. *The BIA and IJ failed to consider country conditions when finding Cheng ineligible for CAT relief.*

Finally, there is no indication that either the IJ or the BIA considered evidence of country conditions when they determined that Cheng was ineligible for CAT relief. Failure "to consider evidence of country conditions constitutes reversible error." *Aguilar-Ramos v. Holder*, 594 F.3d 701, 705 (9th Cir. 2010). We note that the 2007 Country Report on China describes the Chinese government's crackdown on Falun Gong activity, including torturing, imprisoning, and killing thousands of current and former Falun Gong adherents. Falun Gong members and *their families* were among those specifically targeted for arbitrary

5

arrest and detention.  We therefore remand with instructions to the BIA to reconsider Cheng's CAT claim in light of the country conditions in China.  *Id.*

**PETITION FOR REVIEW GRANTED and REMANDED.**