Hugo **LOPEZ–ALVARADO;** Maria Trinidad Lizardo de Lopez; Hugo Giovani Lopez–Lizardo, Petitioners,

v.

John **ASHCROFT,** Attorney General, Respondent.

No. 02–74204.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 2004.

Filed June 15, 2004.

Amended Aug. 24, 2004.

Deborah L. Smith and Michael K. Ungar, Simmons & Ungar, San Francisco, California, and Dorothea K. Langsam, Altshuler, Berzon, Nussbaum, Rubin & Demain, San Francisco, CA, for the petitioner.

Peter D. Keisler, Assistant United States Attorney, Richard M. Evans, Assistant Director, and Patricia L. Buchanan, Trial Attorney, Washington, D.C., for the respondent.

Before REINHARDT, McKEOWN, and PAEZ, Circuit Judges.

## ORDER AND AMENDED OPINION

### ORDER

The government's motion for modification of the decision is granted. The Opinion filed on June 15, 2004 is amended as follows:

1. On slip op. 8015

Change "extreme hardship" to "exceptional and extremely unusual hardship"

2. On slip op. 8015, fn. 1

Delete:

The government argues that the Lopezes' son, Hugo, is ineligible for cancellation of removal because he is younger than ten years of age and thus could not meet the continuous presence requirement. This argument misapprehends the relationship of a minor's application to that of a qualifying relative. If either Mr. Lopez or his wife were to receive cancellation of removal, this relief could in turn be extended to their son. *See In re Recinas*, 23 I & N Dec. 467 (BIA 2002)

Replace with:

The government argues that the Lopezes' son, Hugo, is ineligible for cancellation of removal because he is younger than ten years of age and thus could not meet the continuous presence requirement. We need not decide this issue. If either Mr. Lopez or his wife receives cancellation of removal, their son may be eligible for this or some other form of relief.

3. On slip op. 8015

Change "unusual hardship" to "exceptional and extremely unusual hardship"

4. On slip op. 8023

Change "extreme hardship" to "exceptional and extremely unusual hardship"

### OPINION

McKEOWN, Circuit Judge.

We reaffirm here the principle that "the time element of an alien's residency ... may be shown by credible direct testimony or written declarations." *Vera–Villegas v.*

*INS,* 330 F.3d 1222, 1225 (9th Cir.2003). To qualify for the discretionary relief of cancellation of removal, an alien must, as a threshold matter, have been physically present in the United States for a continuous period of no less than ten years immediately preceding the date of the application. 8 U.S.C. § 1229b(b)(1). In denying the Lopezes' application for cancellation of removal, the Immigration Judge ("IJ") improperly required documentary evidence, despite substantial evidence supporting continuous presence and the lack of an adverse credibility finding. Because the IJ did not advance legitimate reasons for rejecting the testimony, the Board of Immigration Appeals ("BIA") erred in affirming the IJ's decision. We therefore grant the petition for review and remand for consideration of the discretionary determinations of exceptional and extremely unusual hardship and moral character.

## BACKGROUND

In 1997, Hugo Lopez–Alvarado, a native and citizen of Guatemala, along with his wife Maria Lizardo de Lopez and son Hugo,[1] natives and citizens of Mexico, applied for cancellation of removal, asserting that they have continuously resided in the United States for over ten years and that their removal would cause exceptional and extremely unusual hardship for their three-year-old citizen daughter. Upon concluding that both Mr. and Mrs. Lopez failed to establish ten years of continuous presence, the IJ denied the application for cancellation of removal, but granted voluntary departure.

In her oral opinion, the IJ observed that, although Mr. and Mrs. Lopez were not "untruthful," their testimony was "vague and indefinite and the witnesses have not been able to pin down specific time frames to the Court's satisfaction." Nonetheless, the IJ did not make an adverse credibility finding. The IJ noted that Mrs. Lopez could provide only testimonial evidence of her presence from 1987 to 1993. Although Mr. Lopez offered more extensive documentation of his presence than his wife, the IJ took exception to the fact that he could provide only testimonial evidence of his presence in the United States for a portion of the ten-year period. Proceeding under the view that "[t]he instructions to the application for cancellation of removal ... require an applicant to document physical presence in the United States," the IJ considered the witnesses' testimony, without documentary evidence, insufficient to establish continuous presence and denied the applications. Under its streamlining procedures, 8 C.F.R. § 3.1(a)(7) (2002),[2] the BIA affirmed the IJ's decision without opinion.

## JURISDICTION

■ Eligibility for cancellation of removal is based upon both discretionary and non-discretionary factors. 8 U.S.C. § 1229(b)(b). We do not have jurisdiction to review "decisions by the BIA that involve the exercise of discretion." *Romero–Torres v. Ashcroft,* 327 F.3d 887, 890 (9th Cir.2003). We retain jurisdiction, however, to review for substantial evidence the BIA's non-discretionary factual determinations, including the determination of con-

---

1. The government argues that the Lopezes' son, Hugo, is ineligible for cancellation of removal because he is younger than ten years of age and thus could not meet the continuous presence requirement. We need not decide this issue. If either Mr. Lopez or his wife

receives cancellation of removal, their son may be eligible for this or some other form of relief.

2. This section is now referenced § 1003.1(a)(7).

tinuous presence. *Cf. Kalaw v. INS*, 133 F.3d 1147, 1151 (9th Cir.1997) (holding that we have jurisdiction to review the BIA's finding of lack of continuous presence for the purposes of suspension of deportation).

■ We must determine, as a threshold matter, whether the BIA's decision is properly subject to our review. Where, as here, the BIA adopts the decision of the IJ through its streamlining procedures, the decision of the IJ becomes the final decision of the BIA for purposes of our review. *See* 8 C.F.R. § 3.1(a)(7)(iii); *Fajardo v. INS*, 300 F.3d 1018, 1019 n. 1 (9th Cir. 2002). Although the IJ referenced discretionary factors, such as hardship and equity interests, she failed to resolve these issues definitively and did not rest her decision on these grounds. In contrast, the IJ left no doubt that she came to a definitive conclusion on the issue of continuous presence, and that this conclusion served as the basis of her decision, stating "the Court must conclude that the respondents have not met the physical presence requirement of the statute and therefore will fail in their applications for cancellation of removal." Ultimately, the IJ's decision to deny cancellation of removal was based solely on the determination that the Lopezes failed to establish ten years of continuous physical presence, a determination subject to review by this court.

CONTINUOUS PRESENCE ANALYSIS

■ We review for substantial evidence the BIA's decision that an applicant has failed to establish ten years of continuous physical presence in the United States. *See Vera–Villegas*, 330 F.3d at 1230 (applying the substantial evidence standard of review to an IJ's determination that a petitioner had failed to satisfy the continuous physical presence requirement for suspension of deportation). To obtain rever-

sal under this standard, the petitioner must demonstrate that "the evidence not only supports that conclusion, but compels it." *See Molina–Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir.2002) (quoting *INS v. Elias–Zacarias*, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (emphasis omitted)).

■ "[I]t is clearly our rule that when the IJ makes implicit credibility observations in passing, this does not constitute a credibility finding." *Kalubi v. Ashcroft*, 364 F.3d 1134, 1137–38 (9th Cir.2004) (internal quotation marks and ellipsis omitted); *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 658–59 (9th Cir.2003). Absent an explicit adverse credibility finding, a witness's testimony must be accepted as true. *Kalubi*, 364 F.3d at 1138; *Kataria v. INS*, 232 F.3d 1107, 1114 (9th Cir.2000).

■ The case presents the classic situation where the IJ declined to make an adverse credibility finding, but nonetheless failed to credit the witnesses' testimony. Pointing to the lack of corroborating documentary evidence, the IJ concluded that the Lopezes failed to satisfy the continuous presence requirement and denied relief. Importantly, in arriving at this conclusion, the IJ stated that "the Court does not necessarily believe that the respondents may be untruthful," but nevertheless found the testimony to be "vague and indefinite." Such a passing subjective reference to the nature of the testimony does not qualify as an adverse credibility finding. The remark impugns the quality of the evidence, not its veracity.

■ Assuming the veracity of the testimony, the issue is not whether the IJ made a proper credibility finding, but rather whether the IJ correctly found the testimony insufficient to establish the prerequisite continuous presence. Because the IJ failed to provide "a specific, cogent

reason" for rejecting testimony related to the Lopezes' continuous presence, we conclude that the IJ improperly determined that the Lopezes failed to establish ten or more years of continuous presence. *See Vera–Villegas,* 330 F.3d at 1230.

A review of the record reveals that Mr. Lopez provided substantial evidence of his continuous presence. Nothing contradicts his evidence. Indeed, documentary evidence and the written declarations and testimony of several employers, landlords, friends, and family corroborated Mr. Lopez's testimony.

During the removal hearings, Mr. Lopez testified that he entered the United States in 1985 and worked as an electrician for a series of companies in California, beginning with Goldfarb Construction, Sierra Pacific, Acme Electric, and the Rubio Ceramic Tile Company. He attempted to find work in Chicago at the end of 1993, but was unsuccessful and returned to California in 1994. Since his entry into the United States, Mr. Lopez has been outside of the country only once—a one-week trip to Mexico for his wedding in 1993.

An especially compelling portion of the evidence of continuous presence is Mr. Lopez's impressive work history. David Goldfarb, the owner of Goldfarb Construction, provided oral and written confirmation that Mr. Lopez began working for him in October 1985, approximately twelve years prior to the initiation of the removal proceedings. Goldfarb recalled initially hiring Mr. Lopez on an as-needed basis, when Goldfarb worked for a property management company, and eventually employing him full-time between 1989 and 1992, when Goldfarb was a licensed contractor.

Another employer, Bruce Gardiner, documented Mr. Lopez's employment at the end of 1992, as well as from 1994 until the time of the removal hearing. Gardiner further testified that, until shortly before the removal hearing, he knew Mr. Lopez by the alias Adan Garcia and issued W–2 forms to Mr. Lopez under that name. Consistent with this testimony, Mr. Lopez submitted tax records under the name Adan Garcia that correctly named his wife and child, and listed an address associated with the name Hugo Lopez. Although Gardiner noted a gap in Mr. Lopez's employment during the spring and summer of 1993, that period was accounted for by another employer, Armando Rubio, who sent a signed and notarized letter verifying Mr. Lopez's employment with his company in Los Angeles. In sum, the testimony of various employers established consecutive periods of employment from 1985 until the time of the removal hearing, with the exception of a short period during which Mr. Lopez testified that he was in Chicago to seek work.

Additionally, several former landlords submitted letters that established that Mr. Lopez rented apartments in California for over ten years prior to the removal hearing. These submissions covered a nearly continuous period from 1985 to 1997, with the exception of the period in 1993, for which Mr. Lopez's sister-in-law credibly testified that he lived in her Los Angeles home. The record also contains letters from friends and the pastor of his church, further corroborating Mr. Lopez's presence. Together with his testimony and the statements of his employers, these submissions establish a detailed and internally consistent chronology of Mr. Lopez's residence and employment in the United States since 1985.

Yet, in the face of detailed, credible documentary and testimonial evidence, the IJ raised only minor points that can hardly be said to undermine the substantial evidence of physical presence. For example, the IJ noted letters from two landlords that referenced overlapping dates. The IJ did not

conclude that the letters reflected dishonest intentions, but rather merely noted—for the first time—that the inconsistency remained unexplained. The IJ's inconclusive reference can hardly serve as a basis for rejecting Mr. Lopez's documented chronology of his presence. *Cf. Guo v. Ashcroft,* 361 F.3d 1194, 1200 (9th Cir. 2004) ("unclear testimony may not serve as substantial evidence for an adverse credibility finding when an applicant is not given the chance to attempt to clarify his or her testimony."). Nor do the letters eviscerate the credible and substantial evidence of his employers for the same time period. *See Garrovillas v. INS,* 156 F.3d 1010, 1014 (9th Cir.1998) ("minor inconsistencies cannot serve as the sole basis for an adverse credibility finding" (internal quotation marks omitted)).

The second reason the IJ provided for rejecting Mr. Lopez's claim was that the relationship between Hugo Lopez and the alias Adan Garcia was "too tenuous for the Court to make a finding." This characterization is equally baffling. Gardiner, Mr. Lopez's employer at Acme Electric, provided uncontested testimony that he knew Mr. Lopez by the name of Adan Garcia from 1992 until a year before the removal proceedings began, thereby establishing the connection between Mr. Lopez and certain employment records under Garcia's name. In turn, data on the tax returns filed under the name Adan Garcia listed Mrs. Lopez and the son Hugo as members of the household, further linking the alias to Mr. Lopez. It is difficult to imagine clearer documentation of the relationship. The tenuousness the IJ perceived was merely speculative and cannot serve as the basis for rejecting Mr. Lopez's testimony regarding continuous presence.

A careful analysis of the corroborating evidence of employment belies the IJ's suggestion that the testimony is "vague and indefinite." To their credit, Mr. Lopez's employers did not offer cookie cutter testimony about his employment, nor did they profess to have intimate knowledge of his personal life. Indeed, precise recollection of the details of Mr. Lopez's comings and goings might be equally suspicious because it could suggest orchestrated testimony. *Cf. Vera–Villegas,* 330 F.3d at 1232 (remarking that "too much detail might in itself have been cause for suspicion and a credibility challenge"). Thus, for example, there was no specific, cogent reason for the IJ to doubt Goldfarb's testimony simply because Goldfarb was unable to recall Mr. Lopez's trip to Mexico for his wedding; given the context of their relationship, this lack of recall can hardly indict Goldfarb's uncontested testimony about his lengthy employment of Mr. Lopez. Similarly, the lack of certain forms of corroborating documentation, such as tax returns prior to 1994, do not undermine the uncontested testimony of continuous presence during that period. The lack of corroborating tax documents was consistent with Mr. Lopez's status as a part-time construction worker paid in cash.

The IJ also noted that Mr. Lopez worked for six months with a tile company in Los Angeles but failed to mention this job in his cancellation of removal application. Again, the IJ neglected to state what inference she drew from this omission. Even her reference to it is curious because Mr. Lopez's employment in Los Angeles was corroborated through testimony from him, his sister-in-law, and the employer's declaration. To the extent that the IJ based the adverse finding of physical presence on Mr. Lopez's incomplete application, her decision does not comport with precedent. *Cf. Aguilera–Cota v. INS,* 914 F.2d 1375, 1382 (9th Cir.1990) ("[F]ailure to file an application form that was as complete as might be desired cannot, without more, properly serve as the basis for a

finding of lack of credibility."). Accordingly, the reasons cited by the IJ are not the kind of "specific, cogent reason" required by our case law as substantial evidence for rejecting Mr. Lopez's continuous presence claim. *See, e.g., Vera–Villegas,* 330 F.3d at 1230.

■ In reaching this conclusion, we note that the corroborating evidence for Mr. Lopez's continuous presence is particularly strong. Although some of the letters and statements submitted on his behalf were brief and might be given minimal evidentiary weight if they stood alone, their evidentiary value is powerful in the aggregate. *See id.* at 1234. "When a substantial number of individuals are willing to step forward and swear under oath that an undocumented immigrant has lived in their community for a particular period of time, the collective weight of their declarations cannot be dismissed without a reasoned and persuasive explanation." *Id.* The testimony on behalf of Mr. Lopez by multiple employers, landlords, friends, and church members, along with the credible testimony of Mr. Lopez himself, constitutes substantial evidence that compels the conclusion that he maintained a continuous presence in the United States for over ten years.

■ Like her husband, Mrs. Lopez testified to her continuous presence in the United States. She entered the United States 12061 around March or April 1987 and lived with her sister in Los Angeles for six years, until she married Mr. Lopez in 1994. Before her marriage, Mrs. Lopez did not work or go to school during her time in Los Angeles and primarily stayed in her sister's apartment, helping care for her sister's children. Following her marriage, she lived with Mr. Lopez and cared for their children. Mrs. Lopez further testified that she left the United States only twice, once for one week for her

wedding and for two months to visit her ailing mother, also in Mexico, at which time she gave birth to their son.

Nothing about her testimony was vague or unclear, and, significantly, the IJ did not make an adverse credibility finding. Further corroborating her testimony, Mrs. Lopez's sister proffered oral and written testimony verifying Mrs. Lopez's account of her continuous residence, and two friends offered declarations in support of her application. The only discrepancy the IJ noted is whether she visited her mother in Mexico for one month or two. However, this difference is not material insofar as both durations of time are well below the 90 day and 180 day statutory limit for time spent outside the United States. *See* 8 U.S.C. § 1229(b)(d)(2).

In rejecting her claim of continuous presence, the IJ disapproved of the fact that Mrs. Lopez provided only testimonial evidence of her presence from 1987 to 1993. The IJ's demand for documentary evidence was unreasonable in light of Mrs. Lopez's circumstances; the limited availability of evidence is consistent with her testimony that she stayed at home and did not work. Indeed, the IJ did not describe what documentary evidence could have been produced. As a result of the demand for employment records, the IJ effectively precluded Mrs. Lopez from a grant of relief simply because of her role as an in-home care giver. Because the IJ rejected Mrs. Lopez's credible testimony for impermissible reasons, we conclude that the IJ failed to meet the standard we articulated in *Vera–Villegas. See* 330 F.3d at 1230.

In the absence of an adverse credibility finding, we treat the Lopezes as having testified credibly and conclude that substantial evidence supports their claim of ten years of continuous presence. Those issues are now definitively resolved and are not subject to reconsideration by the

BIA or the IJ. Accordingly, we remand the cancellation of removal claim to the BIA for consideration of whether the Lopezes have established good moral character and would suffer exceptional and extremely unusual hardship if removed.[3]

█ In granting the petition for review, we underscore that the lack of documentary evidence is not "an adequate basis for rejecting a petitioner's [claim of continuous presence] if the oral and written testimony is otherwise sufficient." *Id.* at 1234. Importantly, the regulations do not impose specific evidentiary requirements for cancellation of removal. 8 C.F.R. § 240.66; *cf. Vera–Villegas,* 330 F.3d at 1234. The Lopezes submitted the only two documents required in the application for cancellation of removal, as well as several suggested documents. The IJ's demand for more extensive documentary evidence contravenes our established standards for credibility determinations and, by itself, is an invalid reason to discredit their claims of continuous physical presence. The IJ's emphasis on documentary evidence, in concert with the lack of cogent reasons for rejecting the witnesses' testimony, constitutes the type of "fatally flawed" reasoning proscribed by our precedent. *See Aguilera–Cota,* 914 F.2d at 1381.

We GRANT the petition for review and REMAND for further proceedings consistent with this opinion.

---

**3.** Although we do not review the merits of the BIA's decision to streamline and specifically decline to do so here, we recognize that, as a pragmatic matter, the regulations would not permit a single member of the BIA to make the hardship determination because the IJ has yet to decide the issue. On remand, the matter should in turn be remanded to the IJ for consideration of the hardship issue.