# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CORAZON MARTIN LIMON,
                          *Petitioner,*

            v.

ALBERTO R. GONZALES, Attorney
General,*

                          *Respondent.*

No. 03-71896

Agency No.
A46-511-004

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 15, 2005**
San Francisco, California

Filed April 19, 2005

Before: Michael Daly Hawkins, M. Margaret McKeown, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Hawkins

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

David Ndudim and Anthony Nwosu, Law Offices of David Ndudim, Sacramento, California, for the petitioner.

Lyle D. Jentzer, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

**OPINION**

HAWKINS, Circuit Judge:

We must decide the applicability of the jurisdictional bar in 8 U.S.C. § 1252(a)(2)(B)(ii) to the Board of Immigration Appeals' ("BIA") decision that an alien is not eligible for a waiver of inadmissibility pursuant to 8 U.S.C. § 1182(k) (commonly referred to as a "section 212(k) waiver"). Although we conclude that we do have jurisdiction to review

this eligibility determination, substantial evidence supports the BIA's determination that this petitioner was not eligible for the waiver, and we therefore deny the petition.

Petitioner Corazon Martin Limon, a native and citizen of the Philippines, became a lawful permanent resident ("LPR") based on an immediate relative visa petition by her naturalized citizen daughter, Marilou. The government later discovered that Marilou's marriage to a United States citizen was invalid due to a prior marriage in the Philippines, and her citizenship was revoked retroactive to the date of citizenship. The government eventually also served Limon with a notice to appear ("NTA"), charging her as removable for not having a valid visa at the time of entry.[1] The immigration judge ("IJ") sustained this charge, and Limon does not contest this issue on appeal.

Limon sought a discretionary waiver under 8 U.S.C. § 1182(k) and also requested voluntary departure. The IJ denied both requests, and the BIA affirmed. In her petition for review, Limon argues that the BIA abused its discretion in both decisions, while the government contends that this court lacks jurisdiction to review either decision and must dismiss the appeal.

## FACTS AND PROCEDURAL HISTORY

The background of this case is long and storied. On March 21, 1990, Limon's daughter, Marilou, married Raoul Paningbatan in a Filipino civil ceremony. Marilou then returned to work in Singapore, where she married Sam Burris, a United States citizen, in 1991. Marilou and Sam divorced in October 1995.

---

[1] The government alternatively charged Limon with having procured her visa by fraud or willful misrepresentation. The IJ did not sustain this charge.

Based on the marriage to Sam, Marilou became a naturalized United States citizen in January 1996. In July 1997, Marilou returned briefly to the Philippines and had a church wedding with Raoul. In November of that year, Limon entered the United States on an immediate relative visa, based on her daughter's citizenship. Shortly thereafter, Marilou, pregnant with Raoul's child, permanently returned to the Philippines to live with Raoul.

The government thereafter issued Marilou a Notice of Intent to Revoke Naturalization based on its discovery of her marriage to Raoul. In March 1998, Marilou and Raoul had a son. That April, Limon visited them in the Philippines, returning to the United States on June 13, 1998. On June 28, 1998, Marilou's naturalization was revoked.

In February 1999, Limon was served with the NTA. The NTA stated two grounds of inadmissibility: (1) procuring a visa by means of fraud; and (2) lack of a valid visa. The IJ upheld the latter ground and noted that there was also some evidence Limon would have known about her daughter's two marriages. The IJ denied Limon's request for a § 212(k) waiver, stating Limon "should have made reasonable inquiries about the validity of the marriage upon which [Limon] would indirectly rely for her own immigrant status." The IJ also denied voluntary departure because Limon's trip to the Philippines "broke her physical presence" and prevented her from being in the United States for at least one year prior to the NTA.

Limon appealed to the BIA, challenging the IJ's adverse § 212(k) decision and the denial of voluntary departure, but not the IJ's finding of removability. In dismissing Limon's appeal, the BIA concluded that Limon failed to meet her burden of showing that she was "unaware of her ineligibility for admission [and] could not have discovered this ineligibility by exercise of reasonable diligence." The BIA reasoned:

The respondent acknowledged she knew her daughter married Raoul Paningbatan prior to her marriage with Samuel Burris, but she never testified that she investigated whether her daughter obtained a divorce from Raoul. By simply asking her daughter if she obtained a divorce from Raoul, she would have been put on notice that her daughter's United States citizenship status may be invalid. However, she failed to do so even though she has communicated with her daughter about Raoul in the past. Therefore, we find the respondent failed to exercise reasonable diligence.

On appeal, the respondent argues the only inquiry she needed was to verify her daughter was in fact a United States citizen, and the validity of that citizenship is beyond the scope of section 212(k) of the Act. We disagree. It is reasonable to expect a beneficiary of a visa petition to realize her status would be affected by a petitioning relative who obtained their status by fraud.

Limon timely petitioned this court for review.

## DISCUSSION

I. Section 212(k) Waiver

A. Jurisdiction

[1] The government argues that the jurisdictional bar in 8 U.S.C. § 1252(a)(2)(B)(ii) precludes any review of decisions regarding waivers under § 212(k). This provision states in relevant part that: "Notwithstanding any other provision of law, no court shall have jurisdiction to review — . . . any . . . decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under sec-

tion 1158(a) of this title [asylum]." 8 U.S.C. § 1252 (a)(2)(B)(ii).

**[2]** Limon sought a waiver pursuant to 8 U.S.C. § 1182(k), which provides that:

> Any alien, inadmissible from the United States under paragraph (5)(A) or (7)(A)(i)[2] of subsection (a), who is in possession of an immigrant visa may, if otherwise admissible, be admitted *in the discretion of the Attorney General if the Attorney General is satisfied that inadmissibility was not known to, and could not have been ascertained by the exercise of reasonable diligence by, the immigrant* before the time of departure of the vessel or aircraft from the last port outside the United States and outside foreign contiguous territory or, in the case of an immigrant coming from foreign contiguous territory, before the time of the immigrant's application for admission.

(emphasis added).

**[3]** Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), this court reviewed denials of § 212(k) waivers. *See Senica v. INS*, 16 F.3d 1013, 1015 (9th Cir. 1994). We have not addressed the reviewability of these waivers since IIRIRA's enactment. There have, however, been several decisions exploring the parameters of § 1252(a)(2)(B)(ii) and IIRIRA's other jurisdiction-stripping provisions.

**[4]** In *Spencer Enter., Inc. v. United States*, 345 F.3d 683 (9th Cir. 2003), this court enunciated the general framework for applying the jurisdiction-stripping provisions of

---

[2]This is the provision that applies to Limon, who did not appeal the IJ's determination that she was not "in possession of a valid unexpired immigrant visa" pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).

§ 1252(a)(2)(B)(ii). There, we noted that, in order for this provision to apply, the discretionary authority had to be "specified" under the INA. *Id.* at 689. Section 212(k) clearly satisfies this requirement, as it specifies that the ultimate waiver determination lies in the hands of the Attorney General. 8 U.S.C. § 1182 (k) ("may . . . be admitted in the discretion of the Attorney General"); *see also San Pedro v. Ashcroft*, 395 F.3d 1156, 1157 (9th Cir. 2005) (holding that similar language in 8 U.S.C. § 1227(a)(1)(H) clearly specifies that the waiver is in the Attorney General's discretion).

In *Spencer Enterprises* we also considered the "authority" component of § 1252(a)(2)(B)(ii), concluding that "[i]f the authority for a particular act is in the discretion of the Attorney General . . . the right or power to act is entirely within his or her judgment or conscience. Such acts are matters of pure discretion, rather than discretion guided by legal standards." 345 F.3d at 690. We noted that a decision such as whether to classify an alien's past offense as a "particularly serious crime" is lacking in statutory guidelines, and thus left entirely to the discretion of the Attorney General, which renders the decision unreviewable. *See id.* (discussing *Matsuk v. INS*, 247 F.3d 999, 1002 (9th Cir. 2001)).

**[5]** Applying these principles, we recently confronted an appeal from a denial of a waiver of removal under 8 U.S.C. § 1227(a)(1)(H). *San Pedro*, 395 F.3d at 1157. As does § 212(k), § 1227(a)(1)(H) clearly commits the decision to grant or deny the waiver to the discretion of the Attorney General, and it also sets forth various eligibility requirements for the waiver, such as being the spouse, parent, son or daughter of a U.S. citizen or LPR, and being in possession of an immigrant visa. In *San Pedro*, the IJ had found the petitioner statutorily ineligible for the waiver because he failed to possess an immigrant visa or equivalent document, and also alternatively denied the waiver in the exercise of discretion. *Id.* The BIA summarily affirmed. We remanded for the BIA to specify the basis for its affirmance, explaining that if it

affirmed the IJ's discretionary determination, we would lack jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii). *Id.* On the other hand, we noted, we *would* have jurisdiction to review the nondiscretionary statutory eligibility elements, if they instead formed the basis of the BIA's decision. *Id.*

We have reached similar conclusions in other contexts. In dealing with cancellation of removal, we have exercised jurisdiction over various non-discretionary eligibility requirements, such as the determination as to whether there has been "continuous physical presence" in the United States, even though we lack jurisdiction to review the ultimate discretionary decision by the Attorney General. *See Lopez-Alvarado v. Ashcroft*, 381 F.3d 847, 850-51 (9th Cir. 2004). In the same context, however, we held that the existence of "exceptional and extremely unusual hardship" is a subjective, discretionary inquiry, and that we lack jurisdiction to review this discretionary determination by the Attorney General. *Romero-Torres v. Ashcroft*, 327 F.3d 887, 892 (9th Cir. 2003).

In *Nakamoto v. Ashcroft*, 363 F.3d 874 (9th Cir. 2004), we determined that we have jurisdiction to review the BIA's finding that an alien committed marriage fraud. Similar to the language in § 212(k), the provision at issue in *Nakamoto* provides that an alien shall be deportable if "it appears *to the satisfaction of the Attorney General* that the alien has failed or refused to fulfill the alien's marital agreement which in the opinion of the Attorney General was made for the purpose of procuring the alien's admission as an immigrant." *Id.* at 879 (citing 8 U.S.C. § 1227(a)(1)(G)(ii)) (emphasis added). We found that the phrases "to the satisfaction of the Attorney General" and "in the opinion of the Attorney General" were used to identify the decision-maker, and not to specifically grant discretionary authority to the Attorney General. *See id.* at 879-80. We further concluded that the determination of whether an individual had procured a visa by marriage fraud is "a question of fact, determined through the application of traditional legal standards . . . . The Attorney General must

undertake an objective inquiry and refrain from imposing his or her own subjective values on the interpretation of the facts." *Id.* at 881. Thus, we determined that the decision was not entirely discretionary and that § 1252(a)(2)(B)(ii) did not deprive this court of jurisdiction. *Id.*

**[6]** Applying the principles from this line of cases, it seems likely that we would lack jurisdiction over the ultimate exercise of discretion as to whether or not to grant the § 212(k) waiver. *Cf. San Pedro*, 395 F.3d at 1157-58. However, in this case the BIA did not actually exercise that discretion. Rather, the BIA determined that Limon had not met her burden of proving eligibility for the waiver, because she did not exercise reasonable diligence to ascertain the validity of her visa. Accordingly, the question before us is whether the phrase "if the Attorney General is satisfied that inadmissibility was not known to, and could not have been ascertained by the exercise of reasonable diligence," 8 U.S.C. § 1182(k), is a discretionary or nondiscretionary eligibility element.

**[7]** We conclude that this element is nondiscretionary. The determination of whether the petitioner knew or should have known of her inadmissibility is essentially factual in nature, "determined through the application of traditional legal standards." *Nakamoto*, 363 F.3d at 881. Likewise, "reasonable diligence" is a factual determination, resolved by the application of a legal standard to the facts in question. Indeed, "reasonableness" is a common legal standard, and an objective one at that, indicating that this is not a determination the Attorney General makes "solely according to the dictates of his or her conscience." *Id.*; *see also San Pedro*, 395 F.3d at 1157 ("The specified discretion must be pure and unguided by legal standards."); *Hernandez v. Ashcroft*, 345 F.3d 824, 833-35 (9th Cir. 2003) (holding that "extreme cruelty" is a nondiscretionary question, determined through the application of legal standards). Therefore, because the BIA denied Limon's request based on this nondiscretionary eligibility requirement,

we have jurisdiction over Limon's petition for review of this issue.

### B.   Reasonable Diligence

Having determined that we have jurisdiction, we now turn to the question of whether substantial evidence supports the BIA's determination that Limon did not bear her burden of demonstrating that she did not know or could not have discovered the problem with her status by reasonable diligence. *See Lopez-Alvarado*, 381 F.3d at 850. Because the record does not compel a contrary conclusion, we deny Limon's petition. *Id.* at 851 (to obtain reversal under the substantial evidence standard, the petitioner must show that the evidence compels that result).

The facts admitted by Limon suggest that at the very least she was on notice that her daughter's marriage to Sam Burris was suspect. Limon testified before the IJ that Marilou had married Raoul in the Philippines, and that her daughter later wrote to her that she had married Sam Burris, though Limon could not remember how much time had elapsed between the two events. When asked if Marilou ever told Limon that she did not get a divorce from Raoul, Limon responded: "The only thing that she told me was she asked me if I had seen Raoul, and I told her that I hadn't seen him, I didn't see him anymore. Because she said that there was a letter saying that they were not getting along." Limon also testified that in December 1997 (one month after Limon's initial entry in the United States), Marilou returned to the Philippines to live with Raoul and had a child with him three months later.

After her brief visit to the Philippines in 1998, Limon also had an interview with an immigration official in Hawaii upon her return. In this interview, she confirmed that she had immigrated to the United States on her daughter's petition, and that her daughter had immigrated by marrying a U.S. citizen. She also indicated that Sam was not Marilou's first husband, and

Limon claimed that she did not know what happened to the marriage to Raoul. She further indicated that Marilou was presently married to Raoul, and that they married in 1988 or 1989, before the marriage to Sam. Asked if Marilou and Raoul got divorced, she stated "My daughter told me they had a fight after they got married so she went back to Singapore and that's how she met Sam. She did not mention anything to me about getting a divorce with [Raoul]."

**[8]** Limon's own testimony shows that she knew of the marriage to Raoul, and also knew that her daughter's citizenship was based on the marriage to Sam, but never inquired whether her daughter had divorced Raoul. Her responses actually indicate Limon still believed the date of Marilou's marriage to Raoul was 1988 or 1989. Moreover, considering that Marilou had to have been pregnant with Raoul's child at the time Limon entered the United States, it is not unreasonable to conclude that Limon had notice that the marriage to Sam Burris had been bigamous and probably fraudulent.

In light of this factual background, the BIA concluded that "[i]t is reasonable to expect a beneficiary of a visa petition to realize her status would be affected by a petitioning relative who obtained their status by fraud." This is consistent with analogous BIA authority, *Matter of Aurelio*, 19 I. & N. Dec. 458 (BIA 1987), a case in which a visa applicant's American citizen father died before she received her visa. There, the BIA stated:

> It is also argued in regard to the female applicant's diligence in ascertaining her inadmissibility that it would be unreasonable to assume knowledge of our immigration laws by people living in remote Philippine villages. Although the applicants undoubtedly were not familiar with the statutory and regulatory provisions of our immigration laws, we agree with the immigration judge that a reasonable person would understand that eligibility for a visa depends

on the continuing existence of a relationship to the petitioning relative. It is not unreasonable to expect the beneficiary of a visa petition to realize that his immigration status would be affected by the death of the petitioning relative. Since the female applicant knew about her father's death for some time before she received her visa, she could easily have inquired about its impact on her visa application. Under the circumstances present in this case, we conclude that the female applicant failed to exercise reasonable diligence in ascertaining her admissibility to the United States as a fourth-preference immigrant. We therefore find that the immigration judge properly denied the applicants' section 212(k) waiver request.

*Id.* at 463.

**[9]** Limon argues that she should only have to confirm that her daughter was a U.S. citizen and had been married to Sam Burris, and that she should not have to verify that Marilou had obtained a divorce from Raoul. However, in light of the unusual factual circumstances of this case, which strongly suggest Limon's knowledge of the irregularity, this does not appear to be an unreasonable burden. The record does not compel the conclusion that Limon exercised reasonable diligence to ascertain her admissibility, and we therefore deny her petition.

II.   Voluntary Departure

Limon also argues that she was denied due process by the IJ's denial of voluntary departure. She contends that, at the time the IJ ruled, there were no established standards to evaluate the one-year continuous presence requirement contained in the Act.

**[10]** However, 8 U.S.C. § 1229c(f) provides: "[n]o court shall have jurisdiction over an appeal from denial of a request

for an order of voluntary departure . . . ." In contrast to the jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2)(B)(ii) discussed above, we have construed § 1229c(f) to divest this court of all jurisdiction to review both discretionary and nondiscretionary denials of voluntary departure, *including* statutory eligibility for voluntary departure. *Tovar-Landin v. Ashcroft*, 361 F.3d 1164, 1166 (9th Cir. 2004); *Alvarez-Santos v. INS*, 332 F.3d 1245, 1255 (9th Cir. 2003); *see also Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1143-44 (9th Cir. 2002) (citing § 1229c(f) as an example of "when Congress really wanted to eliminate judicial review over all determinations made by the BIA, discretionary and nondiscretionary, it certainly knew how to write a statute unambiguously to accomplish that purpose"). Although couched as a "due process" claim, it is clear that Limon is actually challenging the BIA's determination that she is statutorily ineligible for voluntary departure because of the continuous presence requirement. Because we have no jurisdiction to review this eligibility requirement, we must dismiss the portion of Limon's petition challenging the denial of voluntary departure.

## CONCLUSION

We have jurisdiction to review the denial of the § 212(k) waiver in this case because the decision was not an exercise of discretion, but was based on facts and the application of traditional legal standards. Nonetheless, substantial evidence supports the BIA's determination that Limon did not exercise reasonable diligence to ascertain her admissibility. We lack jurisdiction to review the denial of voluntary departure and dismiss that portion of her appeal.

DENIED in part, DISMISSED in part.