**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

BERNARDO GARCIA PEREZ;
VIRGINIA CONEJO DE GARCIA,

          Petitioners,

   v.

ERIC H. HOLDER, JR.,
Attorney General,

          Respondent.

No. 05-73257

Agency No. A76-728-561;
A76-728-562

MEMORANDUM *

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 7, 2010
Pasadena, California

Before: B. FLETCHER and PAEZ, Circuit Judges, and KORMAN,** District Judge.

---

    *     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

    **     The Honorable Edward R. Korman, United States District Judge, Eastern District of New York, sitting by designation.

Bernardo Garcia Perez ("Mr. Garcia") and Virginia Conejo de Garcia ("Mrs. Garcia") (collectively, "the Garcias"), natives and citizens of Mexico, petition for review of the decision of the Board of Immigration Appeals ("BIA"), affirming and adopting the Immigration Judge's ("IJ's") denial of the Garcias's application for cancellation of removal. The IJ's denial was based on the conclusion that there was insufficient evidence to establish ten years of continuous physical presence under 8 U.S.C. § 1229b(b)(1)(A). The BIA affirmed the decision without opinion.

I

The Garcias are citizens and natives of Mexico. They were married in Mexico on December 26, 1986. They claim to have entered the U.S. together without inspection in April 1987 near San Ysidro, California. By means of notices to appear issued on January 22, 1998, the Garcias were charged with removability pursuant to section 212(a)(6)(A)(i) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), for being present without having been admitted or paroled. On February 6, 1998, they admitted the allegations, conceded removability as charged, and applied for cancellation of removal pursuant to INA § 240A(b), 8 U.S.C. § 1229b(b).

The Garcias currently live in Bakersfield, California, and are the parents of three children named Ruby, Josue, and Ivan. Ivan suffers from a speech impairment

for which he attends special education classes and speech therapy at his school. Mrs. Garcia regularly volunteers for a non-profit organization that assists Ivan with his difficulties. All three children were born in Bakersfield, California and are U.S. citizens who have never been outside of the country.

Through a translator, the Garcias both testified before the IJ that they entered the U.S. in April, 1987. This testimony was corroborated by Mrs. Garcia's sister, Carmen Suarez, who testified that the Garcias moved in with her on April 11, 1987 and stayed until August of 1988. To further support the 1987 entry date, Mr. Garcia submitted a California identification card and DMV card. The identification card bears Mr. Garcia's picture, name, and signature, while the DMV card contains his name and signature. Significantly, both documents were issued in 1987.

In her oral opinion, the IJ observed that the Garcias were served with notices to appear on January 22, 1998, which meant they "must therefore establish that they have been physically present in the United States dating from January of 1988." She concluded that they had failed to prove entry into the U.S. prior to that date. In particular, she concluded that they "more likely" entered the U.S. in April 1988. In sum, under the IJ's analysis, the Garcias missed the cutoff date for establishing ten years of continuous physical presence by approximately 80 days.

While not essential to her holding, the IJ also noted that the Garcias may have

been able to establish the requisite level of hardship to justify cancellation of removal, "particularly with regard to their son Ivan and in addition in view of [Mrs. Garcia's] health problems which could conceivably go unaddressed in Mexico resulting in hardship to all three of this couple's United States citizen children." On May 3, 2005, the BIA affirmed the IJ's decision without opinion.

## II

To be eligible for cancellation of removal, an alien who has not been admitted lawfully for permanent residence must establish, as a threshold matter, that he or she "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." 8 U.S.C. § 1229b(b). Though our review is generally limited to the decisions of the BIA, *see Pichardo v. INS*, 216 F.3d 1198, 1200 (9th Cir. 2000), we directly consider the IJ's opinion where the BIA has summarily affirmed that decision without opinion. *See Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1057 (9th Cir. 2006). We review for substantial evidence the BIA's decision that an applicant has failed to establish ten years of continuous physical presence. *See Vera-Villegas v. INS*, 330 F.3d 1222, 1230 (9th Cir. 2003). Under this standard, the petitioner must show that the evidence not only supports the conclusion, but compels it. *Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002) (citations omitted).

The Garcias argue that the IJ erred because she failed to make an explicit adverse credibility finding, yet nonetheless refused to credit their testimony in support of the claimed entry date. In *Lopez-Alvarado v. Ashcroft*, 381 F.3d 847 (9th Cir. 2004), we observed that it is "clearly our rule that when the IJ makes implicit credibility observations in passing, this does not constitute a credibility finding." *Id.* at 851 (quoting *Kalubi v. Ashcroft*, 364 F.3d 1134, 1137-38 (9th Cir. 2004); *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 658-59 (9th Cir. 2003)). We further stated that "[a]bsent an explicit adverse credibility finding, a witness's testimony must be accepted as true." *Id.* In that case, the IJ had stated that "the Court does not necessarily believe that the [petitioners' testimony] may be untruthful," yet still found that it was "vague and indefinite." *Id.* We found that the IJ's "passing subjective reference to the nature of the testimony does not qualify as an adverse credibility finding. The remark impugns the quality of the evidence, not its veracity." *Id.*; *see also Mansour v. Ashcroft*, 390 F.3d 667, 671-72 (9th Cir. 2004); *Aguilera-Cota v. INS*, 914 F.2d 1375, 1383 (9th Cir. 1990) (noting that "[t]he mere statement that a petitioner is 'not entirely credible' is not enough" to constitute an explicit adverse credibility determination).

Recently, in *Tijani v. Holder*, 598 F.3d 647, 655 (9th Cir. 2010), we held that an explicit credibility determination had not been made where "the immigration judge

found that 'the weight of [petitioner's] words [was] not sufficient to carry his burden of proving eligibility for asylum,'" and where "the immigration judge explicitly refused to find [petitioner] not credible."

In the present case, the IJ concluded:

> The Court cannot consider, however, that [petitioners'] testimony in this regard was entirely credible. The Court does not believe that respondents have intentionally attempted to mislead the Court or that their testimony has been less than candid. It does not appear to the Court, however, that [petitioners] have a clear memory of when they actually entered the United States.

This statement is analogous to those made by the IJ in *Lopez-Alvarado*, in that "[t]he remark impugns the quality of the evidence, not its veracity." 381 F.3d at 851. Indeed, the IJ here never indicated that she believed the petitioners were lying, and in fact remarked that their testimony "was not lacking in candor." Moreover, the IJ made "no specific finding" as to when the Garcias last entered the United States. Thus, the IJ merely found that the Garcias's lack of "clear memory" on the stand prevented them from meeting their burden of proof regarding continuous physical presence since 1987. We therefore credit the Garcias' testimony as true.

In addition to the credible testimony of the Garcias, there is compelling evidence in favor of continuous physical presence. Their claimed 1987 entry date was wholly corroborated by the sworn testimony of Carmen Suarez, who insisted that the

6

petitioners lived and worked in California that year. Even more significantly, the claim was supported by robust objective documentary evidence—to wit, Mr. Garcia's pay stubs and two identification cards, which bear 1987 dates and California addresses.

The IJ did not question the authenticity or legitimacy of either the California identification or DMV card. Nor did she indicate that she thought the documents were fraudulently obtained or the product of forgery. The IJ merely discounted their probative value based on the testimony of Mrs. Garcia, which suggested that Mr. Garcia may have loaned the documents to someone else at some point in 1988. The IJ failed, however, to explain how this fact would account for Mr. Garcia's picture on the California identification card, or how the cards bearing his signature were issued to him in 1987. Thus, the IJ's inconclusive reference to doubts about the documentation can hardly serve as a basis for rejecting Mr. Garcia's documented chronology of his presence, which began in 1987.

Indeed, the documentary evidence in this case is not undermined by the Garcias's inconsistent testimony, given through a translator, regarding events that took place over twenty years ago. These inconsistencies can be attributed to mere mistake and confusion, brought about by the passage of time and the limits of human memory. The IJ acknowledged as much. Indeed, Mrs. Garcia submitted documentation

regarding her medical conditions which, in the IJ's opinion, may have affected her ability to accurately remember.

While the IJ also noted that Mrs. Garcia "has no documents attesting to her continuous physical presence other than letters and affidavits until 1988," Mrs. Garcia's lack of documentary evidence is entirely consistent with her testimony that she did not begin working and receiving paychecks until she lived in Chicago in 1988. *See Lopez-Alvarado*, 381 F.3d at 854 (stating that the "IJ's demand for documentary evidence was unreasonable in light of petitioner's circumstances" as someone who "stayed home and did not work"). Moreover, Mrs. Garcia's presence in California in 1987 was clearly corroborated by the sworn testimony of Carmen Suarez. "[T]he lack of documentary evidence is not 'an adequate basis for rejecting a petitioner's [claim of continuous presence] if the oral and written testimony is otherwise sufficient.'" *Id.* at 855 (quoting *Vera-Villegas*, 330 F.3d at 1234) (second alteration in original).

Thus, in addition to the testimony of the Garcias, as to which the IJ did not make an adverse credibility finding, there is clear and compelling documentary and testimonial evidence of their presence in the U.S. since 1987. Consequently, we grant the petition and remand the case so that the IJ may consider whether the Garcias have satisfied the other requirements for cancellation of removal.

PETITION GRANTED; REMANDED.

8