**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 06-2898 and 06-5079

———————

GILBERTO C. GABRIEL,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
                                        Respondent

———————

PETITION FOR REVIEW OF ORDERS
OF THE BOARD OF IMMIGRATION APPEALS
(Agency No. A29-978-111)
Immigration Judge: Annie S. Garcy

———————

Submitted Under Third Circuit LAR 34.1(a)
May 10, 2010

———————

Before: BARRY, ROTH, <u>Circuit Judges</u> and HILLMAN[*] <u>District Judge</u>

(Opinion Filed:  June 17, 2010)

———————

OPINION

———————

———————

   [*] Honorable Noel L. Hillman, United States District Judge for the District of New
Jersey, sitting by designation.

BARRY, <u>Circuit Judge</u>.

Gilberto Gabriel petitions for review of the denial of his application for cancellation of removal because he did not demonstrate that he had resided in the United States for a ten-year period.  He also petitions for review of the denial of his motion to reopen his removal proceedings on the basis of ineffective assistance of counsel.  We will grant the first petition for review and deny the second as moot.

## I.

Because we write solely for the parties, who are familiar with the record, we will not extensively set forth the facts.  Gabriel, a citizen of Guatemala, entered the United States without inspection through Mexico at age fourteen.  He has sole custody of his two daughters, ages eleven and twelve, both of whom are U.S. citizens.  On July 3, 2001, Gabriel was served with a notice to appear for removal proceedings.  The notice stated that Gabriel entered the United States on or about April 1, 1991.  He conceded the allegations in the notice, except for the date of entry, but argued that he was eligible for asylum and cancellation of removal.

At the hearing on January 28, 2005, the Immigration Judge ("IJ") first denied his request for asylum.[1]  With respect to cancellation of removal, Gabriel had to prove, *inter alia*, that he had been physically present in the United States for at least ten years.  8

_____

[1] Gabriel does not contest this ruling in his petition for review.

U.S.C. § 1229b(b)(1)(A).[2] The period of continuous physical presence is deemed to end when the alien is served with a notice to appear. 8 U.S.C. § 1229b(d)(1). Because Gabriel was served with the notice to appear on July 3, 2001, he had to prove that he had been present in the United States since July 3, 1991.

Gabriel testified (through an interpreter) that he left Guatemala in 1989 and went to Mexico, where he stayed for over a year. He testified that he entered the United States on May 28, 1991 in Arizona, and then traveled to South Carolina, where he worked for a farmer. After living in South Carolina for approximately two months, he moved to Florida.

In addition to Gabriel's testimony, several documents admitted at the hearing noted an entry date of May 28, 1991. Gabriel had filed an asylum application and employment authorization form dated December 16, 1991 that listed his arrival date as May 28, 1991 in Nogales, Arizona and his U.S. address in Florida. The forms were signed with an "x," which Gabriel could not recall making. He filed another asylum application and employment authorization form dated November 28, 1994 that listed an arrival date of May 28, 1991 in Nogales. Having learned to sign his name, Gabriel signed both of these forms. The 1994 asylum application had apparently been altered by an asylum officer during Gabriel's 2001 asylum interview by crossing out the May 28, 1991 date and

---

[2] The issue before the IJ was the length of Gabriel's presence, rather than its continuity.

writing "April 1991" as the entry date. Gabriel did not know why the asylum officer recorded the April date on the form.

Only one document listed an entry date after July 3, 1991 (the date after which any period of physical presence would be less than ten years from the date the notice to appear was served): a departure control card issued to Gabriel in May 1993 after he was stopped by immigration officials, listing his entry date as July 29, 1991. Gabriel testified that "[the immigration officers] didn't speak Spanish so I don't know what happened" with respect to the date that was written down. (A.R. 158.)[3] He said: "Perhaps they didn't understand me because the officers had a lot of people detained. They were writing very quickly in a notebook." (*Id.* 159.) Gabriel explained that the other information on the form (such as his address) was correct because he had an ID card from which the officer got the information.

The IJ denied Gabriel's application for cancellation of removal on the sole basis of the ten-year physical presence requirement. Although she acknowledged that Gabriel had entered the United States as a young, unaccompanied minor who was not even able to sign his name, she found that she could not rely solely on his testimony because he "is not a person who can be relied upon to remember things accurately" (A.R. 44) given that he was unable to recall certain details regarding his first months in the United States and the filing of his asylum applications. She also found that the documentary evidence

---

[3] "A.R." refers to the administrative record in No. 06-2898.

presented was insufficient to establish that Gabriel had been present in the country for ten years, noting inconsistencies among the documents, inconsistencies we discuss in more detail below.

Gabriel appealed to the Board of Immigration Appeals ("BIA"), which dismissed the appeal on May 8, 2006 in a per curiam order. It agreed with the IJ that "[t]he record contains contradictory evidence as to the length of [Gabriel's] physical presence in the United States" that Gabriel failed to convincingly explain. (A.R. 2.) Gabriel filed a petition for review in this Court, No. 06-2898. After retaining his current counsel, Gabriel filed a motion before the BIA to reopen his removal proceedings on the basis of ineffective assistance of counsel. On November 17, 2006, the BIA denied the motion, finding that Gabriel had not complied with the procedural requirements of *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), and holding in the alternative that Gabriel had not been prejudiced by any of his attorney's actions. Gabriel filed another petition for review in this Court, No. 06-5079.

## II.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a).[4] When the BIA's decision

---

[4] Although we are precluded from reviewing the agency's discretionary determination as to whether an alien established that removal would result in exceptional and extremely unusual hardship under 8 U.S.C. § 1229b(b)(1)(D), *Mendez-Moranchel v. Ashcroft*, 338 F.3d 176, 178 (3d Cir. 2003), whether an alien has met the physical presence requirement is a "simply objective, factual determination[]" that courts have found to be non-

substantially relies on the IJ's decision, as here, we review both decisions for substantial evidence. *Kaita v. Att'y Gen. of U.S.*, 522 F.3d 288, 295 (3d Cir. 2008). We will "uphold the agency's findings of fact to the extent that they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Cao v. Att'y Gen. of U.S.*, 407 F.3d 146, 152 (3d Cir. 2005) (internal quotation marks and citation omitted); *see also* 8 U.S.C. § 1252(b)(4)(B). We review adverse credibility determinations, including "inconsistent statements, contradictory evidence, and inherently improbable testimony," for substantial evidence and afford such findings "substantial deference so long as the findings are supported by specific cogent reasons . . . [that are] substantial and bear a legitimate nexus to the finding." *Cao*, 407 F.3d at 152 (internal quotation marks and citations omitted).

### III.

We conclude that the determination that Gabriel did not demonstrate his physical presence in the United States for a ten-year period as of July 3, 1991 is not supported by substantial evidence.

First, the IJ's characterization of Gabriel's memory as being unreasonably poor is not supported by substantial evidence. The IJ criticized Gabriel for not being able to remember details about his time in South Carolina, where he lived nearly fourteen years

---

discretionary and thus reviewable, *Johnson v. Att'y Gen. of U.S.*, -- F.3d --, 2010 WL 1508286, at *1 n.2 (3d Cir. 2010).

before the hearing, when he was fourteen years old and did not speak English. It was unreasonable of the IJ to expect Gabriel to remember his address in South Carolina – and indeed, every address where he had ever resided in the United States. Moreover, Gabriel did in fact provide information about the two months he spent in South Carolina. He testified that he went to South Carolina because the person who gave him a ride in Arizona told him there was work available there. He worked for a farmer in the town of "Manningson or Mannington." (A.R. 170.) Gabriel explained that he did not have any documentation of his employment because he was paid in cash. He was unable to provide proof that he lived in South Carolina (by, for example, a lease or utility bills) because "the farmer would provide everything for us." (*Id*. 171.) He testified that he was no longer in touch with anyone he knew in South Carolina, testimony the IJ found to be reasonable in light of the circumstances.

The IJ also discounted Gabriel's testimony because he denied making the "x" as a signature on the 1991 asylum and employment authorization forms. Although Gabriel did testify that he typically signed documents with his fingerprint before learning to sign his name, he explained that he would make an "x" if asked. There was never any serious dispute that the forms pertained to Gabriel, and he was able to provide other information about how he filled them out.

Second, the IJ and BIA improperly rejected the documentary evidence supporting Gabriel's claim that he entered the United States on May 28, 1991 based on

inconsistencies among the relevant documents. The IJ correctly noted the discrepancies among the 1991 and 1994 asylum forms and Gabriel's testimony with respect to his date of departure from Guatemala, whether he traveled through Mexico, and how much time he spent there. The entry date on the forms, however, was consistent with Gabriel's testimony that he entered the United States on May 28, 1991. As the IJ noted, these documents were created at a time when Gabriel had no identified motive to lie about his entry date. *Cf. Acevedo-Aguilar v. Mukasey*, 517 F.3d 8, 10 (1st Cir. 2008) (citing the entry date provided on asylum form as evidence of when petitioner entered the United States). With respect to the April 1991 date that was written over May 28, 1991 on the 1994 asylum application, it is unclear why this date later appeared on the form. *Cf. Korytnyuk v. Ashcroft*, 396 F.3d 272, 289-90 (3d Cir. 2005) ("[W]e are 'generally skeptical' of using reports of asylum interviews as the basis for finding an applicant lacks credibility where the context for such interviews is unclear," such as how the interview was conducted and whether the immigrant had trouble understanding the questions) (citation omitted). In any event, April 1991 is earlier than May 28, 1991, and is the date listed by the government on Gabriel's notice to appear. With respect to the July 29, 1991 entry date that was listed on Gabriel's 1993 departure card, he explained the circumstances of his encounter with immigration officials, saying that it was chaotic and there was a language barrier.

Finally, we note that the lack of other documentary evidence regarding Gabriel's

entry date is consistent with the circumstances of his arrival as an unaccompanied minor entering without inspection. *See Santana-Albarran v. Ashcroft*, 393 F.3d 699, 705 (6th Cir. 2005) (noting that "an illegal alien, whose manifest aim is to avoid detection, will encounter difficulty providing documentation of his continued presence within the United States for the past decade"). The lack of documentary evidence of Gabriel's time in South Carolina is consistent with his testimony that the farmer paid him in cash and provided him with housing. *See Lopez-Alvarado v. Ashcroft*, 381 F.3d 847, 854 (9th Cir. 2004) (finding that the IJ's demand for documentary evidence was unreasonable in light of petitioner's position as a stay-at-home caregiver and that the lack of documentary evidence was in fact consistent with her testimony).

Given the combination of testimonial and documentary evidence, we hold that the determination that Gabriel had not established the requisite ten years of continuous physical presence in the United States is not supported by substantial evidence.

## IV.

We will grant the petition for review in No. 06-2898 and remand for further proceedings consistent with this Opinion. We will deny the petition for review in No. 06-5079 as moot.[5]

---

[5] Gabriel's ineffective assistance of counsel claim focused on the physical presence issue, which was the sole basis for concluding that he had not established eligibility for cancellation of removal. Given our disposition of this issue, we need not reach the ineffective assistance of counsel claim presented in Gabriel's second petition for review.